1

2

3

4

5

6

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD WILLIS AND VIOLA WILLIS | ) Case No.: 12cv744 BTM (DHB) |
| | ) |
| | ) **ORDER DENYING IN PART AND** |
| Plaintiffs, | ) **GRANTING IN PART DEFENDANT** |
| | ) **METALCLAD'S MOTION FOR** |
| v. | ) **SUMMARY JUDGMENT** |
| | ) |
| BUFFALO PUMPS INC., et al. | ) |
| | ) |
| Defendants. | ) |

Defendant Metalclad Insulation Corporation ("Metalclad") has moved for

Summary Judgment against Plaintiffs. (Doc. 225). For the following reasons,

Defendant's motion is DENIED in part and GRANTED in part.

## BACKGROUND

Plaintiff Donald Willis was allegedly exposed to asbestos while serving in the

United States Navy between 1959 and 1980 as a result of his work with asbestos

1

1    products that the Defendant allegedly sold to the U.S. Navy. (Doc. 291, First

2    Amended Complaint ("FAC") ¶ 2; exs. A, C).

3        In 2012, Donald Willis was diagnosed with Malignant Mesothelioma - a form

4    of cancer that can be caused by inhalation of asbestos particles. (FAC ¶ 1, 3; ex. B).

5    Donald Willis and his wife, Viola Willis, brought suit alleging a number of actions

6    including negligence, strict liability, false representation, intentional failure to warn,

7    premises owner/contractor liability, and loss of consortium. (FAC ¶¶ 20-125).

8        Donald Willis died from Malignant Mesothelioma on May 5, 2013. (FAC ex.

9    B). Viola Willis subsequently amended the complaint to include a cause of action for

10   wrongful death and was substituted in her deceased husband's place so that she could

11   assert his original claims. (FAC ¶¶ 8-10, 86-121).

12       On October 3, 2013, Defendant moved for summary judgment or partial

13   summary judgment in its favor, arguing that Plaintiff cannot establish causation and,

14   even if she could, Plaintiff is not entitled to punitive damages. (Doc. 225).

15                              **LEGAL STANDARD**

16       A motion for summary judgment will be granted "if the movant shows that

17   there is no genuine dispute as to any material fact and the movant is entitled to

18   judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Anderson v. Liberty

19   Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party bears the burden of

20   proof and "must produce either evidence negating an essential element of the

2

1   nonmoving party's claim or defense or show that the nonmoving party does not have

2   enough evidence of an essential element to carry its ultimate burden of persuasion

3   at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir.

4   2000) (citing High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563,

5   574 (9th Cir. 1990)); see also Cleotex Corp v. Catrett, 477 U.S. 317, 322 (1986)

6   ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . .

7   against a party who fails to make a showing sufficient to establish the existence of an

8   element essential to that party's case, and on which that party will bear the burden of

9   proof at trial."). When ruling on a summary judgment motion, the court must view all

10  inferences drawn from the underlying facts in the light most favorable to the

11  nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

12  574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

13  ## **ANALYSIS**

14  Defendant advances two arguments. First, Plaintiff cannot establish the

15  essential element of causation because she cannot prove that Donald Willis was

16  exposed to asbestos containing products manufactured or distributed by Defendant.

17  Second, Plaintiff cannot seek punitive damages because she cannot show that

18  Defendant acted with "malice, fraud, or oppression." The Court will consider each of

19  these arguments in turn.

20

## I. Causation

Plaintiff's claims require proof that Defendant Metalclad caused or contributed to Donald Willis's exposure to asbestos. Rutherford v. Owens-Illinois, Inc., 16 Cal.4th 953, 975 (1997) ("[P]laintiffs [bear] the burden of proof on the issue of exposure to the defendant's product."); McGonnell v. Kaiser Gypsum Co., 98 Cal.App.4th 1098, 1103 (2002) ("A threshold issue in asbestos litigation is exposure to the defendant's product. The plaintiff bears the burden of proof on this issue. If there has been no exposure, there is no causation." (citations omitted)). That said, "[a]sbestos plaintiffs . . . are *not* required to identify the manufacturer of specific fibers that caused the cancer." Id. at 976 (internal quotation marks omitted). Rather, "plaintiffs may prove causation in asbestos-related cancer cases by demonstrating that the plaintiff's exposure to defendant's asbestos-containing product in reasonable medical probability was a substantial factor in contributing to the aggregate *dose* of asbestos the plaintiff or decedent inhaled or ingested, and hence to the *risk* of developing asbestos-related cancer." Id. at 976-77 (citation omitted).

In 1966, Donald Willis was assigned to the USS Ranger, a navy ship undergoing repairs at the Puget Sound Naval Shipyard in the state of Washington. (FAC ex. A; Declaration of Lance R. Stewart ("Stewart Decl."), ex. A, Deposition of Donald Willis ("Willis Depo.") Vol. II, 125:12-126:3; Vol. VIII, 1107:20-1109:3). Before his death, Mr. Willis testified that during the 1966 overhaul period he

1   observed workers from two trucks bearing the name "METALCLAD" deliver and

2   install insulation pads in the engineering spaces aboard the Ranger. (Willis Depo.

3   Vol. II, 125:21-127:20; Vol. V, 556:25-564:4). The installation of the insulation pads

4   generated visible dust. (Willis Depo. Vol. II, 126:22-130:2). Mr. Willis swept up the

5   dust, spreading more into the air he was breathing. (Willis Depo. Vol. II, 128:6-

6   129:22). Over the two years of his assignment to the Ranger, Mr. Willis was present

7   in the same engineering spaces and worked in close proximity to subsequent

8   removals of the insulation, which generated more dust in the air he was breathing.

9   (Willis Dep. Vol. II, 134:8-136:18; Vol. VIII, 1108:25-1111:16). Mr. Willis further

10   testified that he wore no breathing protection and that Metalclad provided no warning

11   concerning the dangers posed by the insulation pads. (Willis Depo. Vol. II, 130:5-

12   131:24).

13   Captain William Lowell testified that, based on the Ranger's pipe covering

14   plans he had examined, he could determine that the insulation pads used on the

15   Ranger contained asbestos. (Stewart Decl., ex. B, Deposition of Captain William

16   Lowell ("Lowell Depo.") Vol. I, 208:20-209:14). Captain Lowell concluded that it

17   was his "opinion to a reasonable degree of naval engineering certainty that Mr. Willis

18   . . . worked in the immediate vicinity of dust generated from asbestos-containing

19   equipment manufactured by the . . . defendants," and that "Metal Clad sold and/or

20   supplied/installed asbestos-containing thermal insulation that created dust in Mr.

1    Willis's workspaces." (Stewart Decl., ex. C, Federal Report in the Case of Donald

2    Willis re: Naval Career 12).

3         Defendant contends that it could not have been the provider of the asbestos

4    products in question because Defendant did not do business in Washington until 1969

5    – years after Mr. Willis purportedly witnessed Metalclad branded trucks deliver

6    insulation pads for use on the Ranger in 1966. In support of this argument, Defendant

7    has produced the declaration of Donald Trueblood, Defendant's person-most-

8    knowledgeable, which states that "Metalclad Insulation Corporation did not conduct

9    any business in Washington State prior to 1969." (Declaration of J. Alan Warfield

10   ("Warfield Decl."), ex. H, Declaration of Don Trueblood ("Trueblood Decl.") 116).

11   Mr. Trueblood's conclusion is based on documents obtained from the Washington

12   State Secretary of State which relate to the incorporation history of Defendant.

13   (Trueblood Decl. 116).[1]

14        Defendant has also produced these documents. Most of the documents are

15   irrelevant for purposes of showing whether or not Defendant or a predecessor-in-

16   interest operated in Washington in 1966, but several are probative: one, an

17   application for a certificate of authority for Defendant to transact business in

18
19   [1] Plaintiff's objections to the Trueblood and Vaudreuil declarations are overruled as
     moot because these declarations relate to liability in general and not punitive
     damages, and the court has denied the motion as to liability. Even considering the
20   declarations, the motion on liability is denied. Therefore, the Court does not have to
     reach the objections and they are overruled without prejudice.

1    Washington dated March 5, 1969 (Trueblood Decl. 157-58); two, an affidavit by

2    Leland E. Sweetser dated March 5, 1969, stating that Defendant was incorporated

3    under the laws of California, that the corporation entered Washington to transact

4    business on January 1, 1969, and "that prior to said date such corporation did not

5    have a place of business or assets located in the state, did not install, erect, furnish a

6    service, or furnish labor under contract with others in the state of Washington"

7    (Trueblood Decl. 160);  and three, a certificate of authority from the Washington

8    secretary of state dated March 14, 1969, authorizing Defendant to transact business in

9    Washington. (Trueblood Decl. 145). Based on these documents, Defendant contends

10   that it was not doing business in Washington in 1966, and thus Defendant could not

11   have provided the insulation pads in question to the Ranger.

12          In summary, Plaintiff has provided evidence that Defendant's agents were at

13   the scene of his exposure. Defendant has provided evidence that its agents were not at

14   the scene. This is a textbook example of a dispute of fact. Defendant has failed to

15   carry its burden of "negating an essential element of the nonmoving party's claim" or

16   "show[ing] that the nonmoving party does not have enough evidence of an essential

17   element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins.

18   Co., 210 F.3d at 1102 (citing High Tech Gays, 895 F.2d at 574). The Court concludes

19   that a reasonable jury could accept the testimony of Donald Willis as true and reject

20   Defendant's documents as a fabrication or mistake. Alternatively, a reasonable jury

7

could accept Defendant's documents while reading them narrowly to include only Metalclad Insulation Corporation as it existed in 1969 and saying nothing about predecessors-in-interest that operated under the Metalclad name. The possibility of a predecessor-in-interest in Washington is plausible in light of Defendant's concession that it purchased the assets of Metalclad Insulation *Company* in 1967, that the predecessor company had been in existence since 1933, and that it has no documents from the predecessor company predating 1967. (Stewart Decl. ex. F, Deposition of Donald R. Trueblood ("Trueblood Depo.") 11:2-12:11, 16:17-17:23, 29:4-30:4; ex. D, Caldo v. Asbestos Defendants, Superior Court of California, County of San Francisco, Case No. 412325, Transcript of Proceedings, February 24, 2005 ("Caldo Trans.") 2142:5-9, 2143:21-28, 2174:7-25, 2189:5-2190:27). If a jury accepted these facts as true and credited Mr. Willis's eyewitness testimony, it could reasonably conclude that Defendant's predecessor-in-interest caused the insulation pads in question to be delivered to and installed on the Ranger in 1966.

Based on the foregoing, a reasonable jury could conclude that Defendant more likely than not caused Mr. Willis's exposure to asbestos fibers. Causation in this case is a disputed issue of fact that will need to be resolved at trial. Defendant's motion for summary judgment on this ground is DENIED.

**II. Punitive Damages**

Alternatively, Defendant seeks partial summary judgment as to Plaintiff's

claim for punitive damages. The availability of punitive damages is a question of state law. <u>Central Office Tel. v. AT&T Co.</u>, 108 F.3d 981, 993 (9th Cir. 1997), <u>rev'd on other grounds</u>, 524 U.S. 214, 228 (1998). To obtain punitive damages under California law, Plaintiff must establish "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a); <u>see also</u> <u>Basich v. Allstate Ins. Co.</u>, 87 Cal.App.4th 1112, 1121 (2001) ("[O]n a motion for summary adjudication with respect to a punitive damages claim, the higher evidentiary standard applies. If the plaintiff is going to prevail on a punitive damages claim, he or she can only do so by establishing malice, oppression or fraud by clear and convincing evidence."). Moreover, Cal. Civ. Code § 3294(b) imposes a heightened bar for obtaining punitive damages against corporations:

> An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. <u>With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.</u>

<u>Id.</u> (emphasis added).

Plaintiff argues that Defendant acted with malice because it knew or should

9

1    have known that asbestos was dangerous and, despite this knowledge, continued to

2    sell asbestos and took no remedial action to mitigate the danger to others. Malice is

3    defined by California law as "conduct which is intended by the defendant to cause

4    injury to the plaintiff or despicable conduct which is carried on by the defendant with

5    a willful and conscious disregard of the rights or safety of others." Id. at § 3294(c)(1).

6        In support of her argument, Plaintiff notes that as early as 1936, California had

7    issued industrial safety orders requiring the suppression, control, and prevention of

8    harmful dust; limiting the total amount of dust permitted on jobsites; and requiring

9    methods of control such as ventilation, protective equipment, or dust allaying media.

10   (Stewart Decl. ex G).[2] Plaintiff also emphasizes Defendant's concession that it was

11   familiar with and subject to California general industry safety orders (Caldo Trans.

12   2162:16-22), that it knew by 1972 that one of its manufacturers had stopped using

13   asbestos in its products (Caldo Trans. 2168:22-2169:17), that by 1973 at least one of

14   its manufacturers had placed a warning on boxes containing asbestos products to

15   "avoid creating dust" and that it understood that some hazard existed because of these

16   warning labels (Caldo Trans. 2155:20-2156:27, 2168:12-2169:4), and that it made no

17   effort after 1973 to refuse and return asbestos products to its manufacturers, or to

18   locate previous installations of asbestos and recall them, but it did begin selling

19   asbestos removal services (Caldo Trans. 2169:18-28, 2164:28-2165:17, 2166:16-26).

20   _____

[2] Plaintiff has requested that this Court take judicial notice of the California General
Industry Safety Orders pursuant to Cal. Evid. Code § 451. The request is granted.

1        Only evidence of Defendant's knowledge and actions before and during

2    Plaintiff's alleged exposure to Defendants' products from 1966-68 is relevant for

3    purposes of establishing punitive damages against Metalclad. Defendant's

4    concessions, excluding its general awareness of California industry safety orders,

5    reference knowledge and actions that postdate Plaintiff's exposure to Defendant's

6    products and therefore can lend no support to Plaintiff's claim that Defendant acted

7    with malice towards Donald Willis when it supplied insulation pads to the Ranger in

8    1966. See Medo v. Superior Court, 205 Cal.App.3d 64, 68 (1985) ("Punitive damages

9    are not simply recoverable in the abstract. They must be tied to oppression, fraud or

10   malice *in the conduct which gave rise to liability in the case*."); State Farm Mut.

11   Auto. Ins. Co. v. Campbell, 538 U.S. 408, 422-23 (2003) ("A defendant should be

12   punished for the conduct that harmed the plaintiff, not for being an unsavory

13   individual or business. Due process does not permit courts, in the calculation of

14   punitive damages, to adjudicate the merits of other parties' hypothetical claims

15   against a defendant . . . .").

16        The only remaining evidence that Plaintiff has marshaled to show that

17   Defendant willfully and consciously disregarded the rights and safety of Mr. Willis is

18   the existence of the 1936 California industry safety order that regulated dust on work

19   sites and Defendant's statement that "we certainly are familiar with the general

20   industry safety orders," and subject to them. (Caldo Trans. 2162:16-22). Defendant

1    went on to clarify that it lacked specific knowledge of what California's general

2    industry safety orders said about asbestos going back to the 1940s. (Caldo Trans.

3    2162:23-25).

4          To withstand summary judgment, Plaintiff must be capable of establishing by

5    clear and convincing evidence that defendant's officers, directors, or managing agents

6    undertook or ratified "despicable conduct . . . with a willful and conscious disregard

7    of the rights or safety of others." Cal. Civ. Code § 3294. Plaintiff cannot meet this

8    exacting standard.

9          First, plaintiff has failed to advance any evidence that Defendant's officers,

10   directors, or managing agents engaged in or approved of a wrongful act. The fact that

11   California issued a general safety order regulating the amount of dust at industrial

12   work sites and that Defendant knew of the safety order's general existence, but not its

13   content, is a very thin reed on which to hang a case. Plaintiff need not produce a

14   smoking memorandum signed by the board of directors authorizing a criminal

15   enterprise to obtain punitive damages. See Taylor v. Superior Court, 24 Cal.3d 890,

16   894 (1979) ("[M]alice . . .  may be proved under section 3294 either expressly (by

17   direct evidence probative on the existence of hatred or ill will) or by implication (by

18   indirect evidence from which the jury may draw inferences)." (citations omitted)).

19   But no reasonable jury could infer from these facts alone that Defendant, by clear and

20   convincing evidence, authorized or ratified a wrongful act as a matter of policy.

1    Second, Plaintiff cannot show that Defendant acted with a "willful and

2    conscious disregard of the rights or safety of others." See <u>G.D. Searle & Co. v.</u>

3    <u>Superior Court</u>, 49 Cal.App.3d 22, 31 (1975) ("Section 3294 views evil motive as the

4    central, essential factor in the malice which justifies an exemplary award. That factor

5    calls upon the jury to assess the *defendant's actual state of mind*; it is not satisfied by

6    characterizing his conduct as unreasonable, negligent, grossly negligent or reckless."

7    (emphasis added) (citations omitted)). Plaintiff's evidence suggests, at most, that

8    Defendant should have known that its asbestos products were dangerous. It does not

9    establish by clear and convincing evidence that Defendant had actual knowledge of

10   the substantial risk posed by asbestos insulation in 1966 and that Defendant

11   consciously disregarded the risk by continuing to sell such insulation.

12       Finally, plaintiff must establish that Defendant's conduct was truly

13   "despicable," such that it was comparable to the commission of a crime. The

14   culpability inherent to an ordinary tort will not suffice. <u>Taylor</u>, 24 Cal.3d at 894-95

15   ("Something more than the mere commission of a tort is always required for punitive

16   damages. There must be circumstances of aggravation or outrage . . . ."); <u>American</u>

17   <u>Airlines, Inc. v. Sheppard</u>, 96 Cal.App.4th 1017, 1050 (2002) ("Despicable conduct

18   has been described as conduct which is so vile, base, contemptible, miserable,

19   wretched or loathsome that it would be looked down upon and despised by ordinary

20   decent people. Such conduct has been described as [having] the character of outrage

13

frequently associated with crime." (internal quotations and citations omitted)). While Defendant's sale of dangerous asbestos-laden products was hardly laudatory, there is no evidence suggesting that Defendant's conduct was so vile and reprehensible as to warrant the extraordinary remedy of punitive damages.

## CONCLUSION

For the foregoing reasons, Defendant Metalclad's motion for summary judgment is DENIED in part and GRANTED in part. Plaintiff's claim for punitive damages is dismissed. Plaintiff's remaining claims against Defendant may move forward.

IT IS SO ORDERED.

Dated: March 17, 2014

BARRY TED MOSKOWITZ, Chief Judge
United States District Court