Edward R. Ulloa (CA SBN 177909)
*eulloa@hptylaw.com*
Julia A. Gowin (CA SBN 234995)
*jgowin@hptylaw.com*
Andrew S. Russell (CA SBN 271950)
*arussell@hptylaw.com*
Michael B. Giaquinto  (CA SBN276229)
*mgiaquinto@hptylaw.com*
**HAWKINS PARNELL THACKSTON & YOUNG LLP**
445 South Figueroa Street, Suite 3200
Los Angeles, CA  90071
Telephone:  213.486.8000
Facsimile:   213.486.8080

Attorneys for Defendant,
JOHN CRANE INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA WILLIS, individually and as successor in interest to THE ESTATE OF DONALD WILLIS, deceased<br><br>                              Plaintiff,<br><br>       v.<br><br>BUFFALO PUMPS, INC., *et al.*<br><br>                              Defendants. | Case No. 12-CV-0744 BTM-DHB<br><br>*Hon. Barry T. Moskowitz*<br><br>**DEFENDANT JOHN CRANE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER TO QUASH DEFENDANT JOHN CRANE INC.'S CIVIL SUBPOENAS TO BANKRUPTCY TRUSTS**<br><br>[*FILED CONCURRENTLY WITH DECLARATION OF MICHAEL B. GIAQUINTO*]<br><br>Date:         May 27, 2014<br>Time:        3:30 pm<br>Loc.:         10th Floor (Annex)<br>                 Suite 1080<br>                 333 West Broadway<br>                 San Diego, CA 92101<br><br>Complaint Filed:  February 14, 2012<br>Pretrial Conf.:      June 11, 2014<br>Trial Date:          None |

12-CV-0744 BTM-DHB

JOHN CRANE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER TO QUASH JOHN CRANE INC.'S CIVIL SUBPOENAS TO BANKRUPTCY TRUSTS

10608736v.1

# TABLE OF CONTENTS

I.  INTRODUCTION…………………………………………………………………1

II. STATEMENT OF FACTS……………………………………………………2

    A. Background On Asbestos Bankruptcy Trusts…………………………..2

    B. The *Garlock* Decision……………………………………………………4

    C. Plaintiff Is Withholding Evidence Of Mr. Willis' Bankruptcy Trust Submissions……………………………………………………………………6

III.   ARGUMENT…………………………………………………………………8

    A. PLAINTIFF'S BANKRUPTCY TRUST CLAIM FORMS AND SUPPORTING FACTUAL DOCUMENTATION ARE NOT PRIVILEGED OR CONFIDENTIAL……………………………………………………………8

        1.  Confidentiality………………………………………………………9

        2.  Privilege………………………………………………………………9

        3.  Exposure Information……………………………………………10

    B. PLAINTIFF'S MOTION TO QUASH IGNORES FEDERAL CASE LAW AND THE FEDERAL RULES OF CIVIL PROCEDURE……………………………10

        1.  The California Code of Civil Procedure Does Not Apply……….10

        2.  The California Evidence Code Does Not Apply…………………11

    C. ADMISSIBILITY OF BANKRUPTCY TRUST DOCUMENTS HAS NO BEARING ON DISCOVERABILITY……………………………………………12

    D. BANKRUPTCY TRUST INFORMATION IS VITAL TO JCI'S DEFENSES BECAUSE IT IDENTIFIES ALTERNATIVE SOURCES OF EXPOSURE……..13

    E. PLAINTIFF SHOULD NOT BE ALLOWED TO END RUNS THE RULES…...14

IV.   CONCLUSION……………………………………………………………16

**JOHN CRANE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER TO QUASH JOHN CRANE INC.'S CIVIL SUBPOENAS TO BANKRUPTCY TRUSTS**

10608736v.1

# TABLE OF AUTHORITIES

## Cases

*Erie Railroad Co. v. Tompkins*,
304 U.S. 64, 78 (1934) ................................................................11

*Fagin v. Gilmartin*
432 F.3d 276, 285 (3rd Cir. 2005) fn. 2 ......................................11

*Fishermen & Merchants Bank v. Burin*,
11 F.R.D. 142, 143 (S.D. Cal. 1951).............................................8

*Gasperini v. Center for Humanities Inc.*,
518 U.S. 415, 427 (1996) ...........................................................11

*Hanna v. Plumer*
(1965) 380 US 460, 472 ..............................................................11

*Herchenroeder v. Johns Hopkins Univ. Applied Physics* Lab.,
171 F.R.D. 179, 181 (D.Md.1997) ..............................................14

*Hickman v. Taylor*,
329 U.S. 495, 507 (1947) ........................................................8, 16

*In re Garlock Sealing Technologies, LLC*,
504 B.R. 71, 83-86 (Bankr. W.D.N.C. 2014) ....................2, 3, 4, 5

*In re Western Asbestos Co.*,
416 B.R. 670, 710-11 (N.D. Cal. 2009) .........................................8

*Jaffee v. Redmond*,
518 U.S. 1, 116 S.Ct. 1923 .........................................................16

*Lyman v. Union Carbide Corp.*,
2009 WL6869437 (E.D.Pa. Sept. 18, 2009) ..................................9

*Polston v. Eli Lilly & Co.*,
2010 WL 2926159 *1 (D.S.C. July 23, 2010) ..............................14

*Porter Hayden Co. v. Bullinger*,
350 Md. 452, 464, 469 (1998) ...............................................10, 12

*Renfrew v. Hartford Acc. and Indem. Co.*,
406 Fed.Appx. 227 (9th Cir. 2010) ................................................9

*Shalaby v. Newell Rubbermaid, Inc.*,
379 Fed.Appx. 620 (9th Cir. Cal. 2010) ......................................13

*Shepherd v. Pneumo-Abex, LLC*,
2010 WL 3431633 (E.D.Pa. Aug.30, 2010).............................9, 14

*Sparks v. Owens-Illinois, Inc.*,
32 Cal.App.4th 461, 476-479 (1995) ...........................................15

*University of Texas at Austin v. Vratil*,
96 F.3d 1337, 1340, fn. 3. (10th Cir. 1996) .................................12

*Volkswagen of America, Inc. v. Superior Court* (*Rusk*),
139 Cal.App.4th 1481 (2006)..........................................................9

*Young v. State Farm Mut. Auto. Ins. Co.*,
169 F.R.D. 72, 77-80 (S.D.W.Va. 1996) .....................................1, 9

12-CV-0744 BTM-DHB

JOHN CRANE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER TO QUASH JOHN CRANE INC.'S CIVIL SUBPOENAS TO BANKRUPTCY TRUSTS

10608736v.1

**Statutes**

CAL. CIV. CODE, § 1431.2 ................................................................15

FED. R. CIV. P. 26(b)(1) ................................................................15

FED. R. CIV. P. 45(d)(3) ..............................................................2, 8

FED. R. CIV. PRO 26(b)(1) .............................................................14

FED. R. EVID. 502 *et seq*...............................................................10

12-CV-0744 BTM-DHB

10608736v.1

## I.   INTRODUCTION

Plaintiff's Motion to Quash should be denied because:

- The bankruptcy trust claim forms and associated documentation are discoverable;

- The documents are neither confidential nor privileged and production would not violate Plaintiff's right to privacy;

- Plaintiff's submissions to the asbestos bankruptcy trusts are relevant and vital to prove the true cause of Mr. Willis' disease and to properly apportion fault amongst the joint tortfeasors;

- The admissibility of Plaintiff's claim forms at trial has no bearing on discoverability; and

- Plaintiff is strategically withholding this information to inflate her recoveries in the tort and the trust systems.

For over two years, JCI has sought documents from Plaintiff related to Mr. Willis' asbestos bankruptcy trust submissions.   Plaintiff's responses to JCI's discovery, certified under Rule 26 (g)(1) of the Federal Rules of Civil Procedure, repeatedly stated that, "no such claims were made."   However, on March 28, 2014, Plaintiff disclosed − for the first time − a claim to the Eagle-Picher Industries Personal Injury Settlement Trust ("EPI Trust") made on Mr. Willis' behalf.   The claim form indicated that it was filed well *before* JCI propounded its discovery in this case.   To ensure no other information had been withheld, JCI subpoenaed Eagle-Picher and various other asbestos bankruptcy trusts.

Plaintiff now seeks to prevent JCI from obtaining non-privileged information that supports its defenses and will paint a full picture at trial.  These documents detail Mr. Willis' exposure to asbestos attributable to bankrupt entities and his work with asbestos-containing products manufactured or sold by bankrupt companies.   It is fundamentally unfair for Plaintiff to manipulate the evidence such that her "target

12-CV-0744 BTM-DHB

JOHN CRANE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER TO QUASH JOHN CRANE INC.'S CIVIL SUBPOENAS TO BANKRUPTCY TRUSTS

10608736v.1

1  defendants" − the solvent companies, including JCI − take the full blame for any
2  alleged harm to Mr. Willis.

3        Plaintiff's assertion of "privilege" is baseless.  Numerous federal courts have
4  looked at this issue and determined that asbestos bankruptcy trust documents are
5  discoverable.  By seeking to quash JCI's subpoenas, Plaintiff is attempting to block
6  access to relevant evidence and further inflate her potential recovery against the
7  remaining defendants. The Court should accordingly deny Plaintiff's motion.  *See*
8  FED. R. CIV. P. 45(d)(3).

9  **II.    STATEMENT OF FACTS**

10       **A. Background on Asbestos Bankruptcy Trusts**

11       Asbestos litigation is now in its fifth decade.  In the early years, thermal
12  insulation companies were the primary defendants.  These companies were forced to
13  seek bankruptcy protection when their resources were exhausted by the mounting
14  litigation.  "The first asbestos-related bankruptcy filings by UNARCO Industries, Inc.
15  and Manville Corporation in 1982 kicked off a succession of bankruptcies by
16  companies in the asbestos-related manufacturing and installation industries."  Other
17  major defendants, such as Celotex Corporation, Eagle Picher, and Keane Corporation,
18  filed bankruptcies in the 1990s.  *In re Garlock Sealing Technologies, LLC*, 504 B.R.
19  71, 83-86 (Bankr. W.D.N.C. 2014).

20       Another wave of asbestos litigation bankruptcies hit from 2000 to 2005 when
21  Owens Corning Fibreboard, Pittsburgh Corning, U.S. Gypsum, Babcock & Wilcox,
22  Federal Mogul, Turner & Newell, Armstrong World Industries, and W.R. Grace
23  sought protection from the tort system.  *Garlock*, 504 B.R. at 86.  As more and more
24  companies filed bankruptcy, increased monetary pressure was placed on the "newer"
25  or more "peripheral" defendants to fill the void.  This snowball effect has caused
26  approximately ninety-six companies to file for bankruptcy protection from asbestos
27  liabilities to date.

28

Section 524(g) of the Bankruptcy Code permits debtors to establish a fund for present and future claimants alleging asbestos-related injury. Through 524(g), an entity with asbestos liability may file for reorganization, establish a trust for asbestos claimants, and emerge free of most asbestos-related liability. In many instances, asbestos plaintiffs' firms have set up the general payout policies and hold advisory positions on the trusts. To receive compensation, claimants − usually through their attorneys − file affidavits describing their injury, work history, and alleged exposure to the particular company's asbestos-containing product. For some trusts, the offer of proof is as simple as demonstrating work at one of thousands of "approved sites." For other trusts, claimants include sworn statements of work with or around asbestos-containing products manufactured by the bankrupt entity. Currently, there are close to 100 asbestos bankruptcy trusts in existence with tens of billions of dollars in estimated assets.

Because the bankrupt entities cannot be sued, the solvent defendants have emerged as "targets" for plaintiffs and their attorneys. Most of the current defendants manufactured or sold products containing a small percentage of short fiber chrysotile whereas the insolvent companies manufactured products using a far more toxic form of asbestos known as "amphibole."[1] Asbestos claimants now have two avenues of recourse: (1) litigation against the remaining viable defendants in the tort system; and (2) claims with the various bankruptcy trusts. Instead of filing these claims immediately, however, plaintiffs wait until their civil case completes. This permits them to "double recover." They withhold all evidence of exposure to bankrupt entities' products until the solvent defendants have paid artificially inflated settlements or the jury has awarded artificially inflated verdicts. Once the judgment or

---

[1] Thermal insulation is made from amosite asbestos, which is an amphibole. The amosite asbestos found in thermal insulation is far more toxic that chrysotile asbestos in gaskets and packing. *See In re Garlock Sealing Technologies, LLC,* 504 B.R. 71, 75 (Bankr. W.D.N.C. 2014).

JOHN CRANE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER TO QUASH JOHN CRANE INC.'S CIVIL SUBPOENAS TO BANKRUPTCY TRUSTS

10608736v.1

settlement is paid, plaintiffs file (or disclose) their claims with the trusts and recover again.

**B. The *Garlock* Decision**

On January 10, 2014, the Honorable George R. Hodges found "a startling pattern of misrepresentation" whereby asbestos plaintiffs' attorneys manipulated the exposure evidence to implicate only the solvent companies in asbestos-related tort actions. *In re Garlock Sealing Technologies, LLC,* 504 B.R. 71, 86 (Bankr. W.D.N.C. 2014). Garlock produced and sold asbestos-containing gaskets used in maritime, refinery, and other industrial applications. *Id.* at 73. For nearly thirty years, it was sued in the tort system by victims of various asbestos-related diseases until it filed for bankruptcy in June 2010. *Id.*

The United States Bankruptcy Court set out to determine the aggregate amount of money owed by Garlock for present and future claims. *Garlock,* 504 B.R. 73. Counsel for the present and future trust claimants ("plaintiffs") argued that evidence of past settlements should be used to determine the set aside for asbestos victims, which plaintiffs estimated to be $1-1.3 billion. *Id.* at 74. Garlock proposed that the court conduct a "legal liability" approach, which focused on the merits of the individual claims − based on science and social science − rather than its settlement history. *Id.* at 94. The court allowed full discovery into 15 resolved cases to compare the information that was disclosed to Garlock's counsel before trial with what was later filed by plaintiffs as bankruptcy claims. *Id.* at 84.

After an extensive evidentiary hearing, the *Garlock* court found that there had been substantial nondisclosure in all 15 cases. *Garlock,* 504 B.R. at 84 ("on average plaintiffs disclosed only about 2 exposures to bankruptcy companies' products, but after settling with Garlock made claims against about 19 such companies' Trusts"). The court determined that past settlement values were not reliable indicators of future liability because "the withholding of exposure evidence by plaintiffs and their lawyers

1  was significant and had the effect of unfairly inflating the recoveries...” *Id.* at 86-87.

2  The court further explained:

> [m]ost significant to Garlock … was the fact that often the evidence of
> exposure to those insulation companies’ products also ‘disappeared.’
> This occurrence was a result of the effort by some plaintiffs and their
> lawyers to withhold evidence of exposure to other asbestos products
> and to delay filing claims against bankrupt defendants’ asbestos trusts
> until after obtaining recoveries from Garlock (and other viable
> defendants).  Garlock presented substantial evidence of this practice
> and a few examples will demonstrate the pattern…

*Id.* at 84.

The bankruptcy court condemned plaintiffs’ strategic practice of withholding
bankruptcy trust disclosures to recover first in the civil system and then again the trust
system.  *Garlock,* 505 B.R. at 85 (quoting a plaintiffs’ attorney, “the best way for
[plaintiffs] to maximize their recovery is to proceed against solvent viable non-
bankrupt defendants first, and then, if appropriate, to proceed against bankrupt
companies”].)   Judge Hodges explained this practice artificially inflates the civil
recoveries because evidence of a plaintiff’s exposure to insulation manufacturers’
products “all but disappeared” after those companies filed for bankruptcy.  *Id.* at 73.
Ultimately, Garlock’s liability approach was adopted by the court and its estimated
aggregate liability for present and future claims was set at $125 million − 90% less
than what plaintiffs demanded.  *Id.* at 97.

/ / /

/ / /

/ / /

/ / /

/ / /

5

10608736v.1

### C. Plaintiff is Withholding Evidence of Mr. Willis' Bankruptcy Trust Submissions

JCI began requesting Plaintiff's bankruptcy trusts claims after Mr. Willis testified to working with and around "dusty thermal insulation" at deposition.[2] (Numerous manufacturers and suppliers of asbestos-containing thermal insulation have set up bankruptcy trusts to compensate claimants injured by their products).  In summary:

- On September 4, 2012, JCI served its Request for Production of Documents (Set One) to Donald Willis seeking all documents concerning or evidencing any claims made to an asbestos bankruptcy trust by him or on his behalf.  The request included any and all supporting factual documentation.[3]

- Mr. Willis responded on October 11, 2012, asserting that "Plaintiff has not submitted any claim to any Bankrupt Entity and/or Trust."[4]

- JCI again asked for bankruptcy trust information on October 24, 2012, when it propounded a second set of document requests to Donald Willis.[5]  Mr. Willis responded to JCI's Request for Production of Documents (Set Two) on November 26, 2012, again asserting that "Plaintiff has not submitted any claim to any Bankrupt Entity and/or Trust."[6]

- On February 27, 2014, after this Court re-opened discovery for wrongful death, JCI asked that Plaintiff's counsel supplement their prior responses to JCI's discovery with regard to "documents that were submitted, or will be submitted to

---

[2] *See* Donald Willis' Deposition Transcript Volume 2 p.142:24-144:1, Volume 6, p. 791:23-792:12, Volume 8 p.1051:24-1052:4, relevant portions collectively attached as **Exhibit A, pp. 4-19** to the Declaration of Michael B. Giaquinto ("Giaquinto Decl.").
[3] *See* JCI's Request for Production of Documents (Set One) to Plaintiffs, relevant portions attached as **Exhibit B, pp. 20-35** to the Giaquinto Decl.
[4] *See* Plaintiff's Response to JCI's Requests for Production of Documents (Set One), relevant portions attached as **Exhibit C, pp. 36-242** to the Giaquinto Decl.
[5] *See* JCI's Request for Production of Documents (Set Two) to Plaintiff, relevant portions attached as **Exhibit D, pp. 243-259** to the Giaquinto Decl.
[6] *See* Plaintiff's Response to JCI's Request for Production of Documents (Set Two), relevant portions attached as **Exhibit E, pp. 260-301** to the Giaquinto Decl.

6                          12-CV-0744 BTM-DHB

JOHN CRANE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER TO QUASH JOHN CRANE INC.'S CIVIL SUBPOENAS TO BANKRUPTCY TRUSTS

10608736v.1

bankruptcy trusts."[7]  JCI also propounded a Request for Production of Documents (Set One) to Plaintiff Viola Willis.[8]

- On March 28, 2014, Plaintiff responded to JCI's requests indicating − for the first time − that "Plaintiff has made a completed claim with the bankruptcy trust for, EAGLE PICHER, regarding the injuries at issue in this matter."  She also produced the claim form.[9]

- After comparing the claim form disclosed by Plaintiff with the categories of information required by the EPI Trust, it was apparent that Plaintiff had produced an incomplete set of documents.[10]

- Although the documents were incomplete, they indicated that Mr. Willis' trust claim was filed months *before* JCI's initial request for such documents in 2012.[11]

- On April 2, 2014, JCI asked Plaintiff to supplement her partial production with the factual information submitted to the Eagle Picher Bankruptcy Trust.[12] Plaintiff did not respond.

- On April 3, 2014, JCI served subpoenas to various asbestos bankruptcy trusts, including Eagle Picher, for all documentation related to Mr. Willis' claims.[13]

- On April 25, 2014, JCI received claim documents from the EPI Trust indicating that Mr. Willis filed a bankruptcy trust claim on March 11, 2012 − less than a month after filing his personal injury action.[14]

---

[7] *See* JCI letter to Plaintiff, dated February 27, 2014, attached as **Exhibit F, pp. 302-306** to the Giaquinto Decl.
[8] *See* JCI's Request for Production of Documents (Set One) to Plaintiff Viola Willis, attached as **Exhibit G, pp. 307-318** to the Giaquinto Decl.
[9] *See* Plaintiff Viola Willis' Responses to JCI's Request for Production (Set One), attached as **Exhibit H, pp. 319-350** to the Giaquinto Decl.; *see also*, Plaintiff's claim submission to the Eagle Picher Asbestos Bankruptcy Trust, attached as **Exhibit I, pp. 351-356** to the Giaquinto Decl.
[10]    *See*    Eagle    Picher    Trust    Requirements    at    http://www.cpf-inc.com/upload/temp/EPIClaimForm2012.pdf, attached as **Exhibit J, pp. 357-368** to the Giaquinto Decl.
[11] *See* Plaintiff's disclosed claim submission to the Eagle Picher Asbestos Bankruptcy Trust, attached as **Exhibit I, pp. 351-356** to the Giaquinto Decl.
[12] *See* JCI's Letter to Plaintiff, dated April 2, 2014, attached as **Exhibit K, pp. 369-373** to the Giaquinto Decl.
[13] *See* JCI's Subpoenas to Asbestos Bankruptcy Trusts, collectively attached as **Exhibit L, pp. 374-457** to the Giaquinto Decl.

7                    12-CV-0744 BTM-DHB

JOHN CRANE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER TO QUASH JOHN CRANE INC.'S CIVIL SUBPOENAS TO BANKRUPTCY TRUSTS

10608736v.1

- On the evening of April 25, 2014, Plaintiffs moved to quash JCI's subpoenas.  They provided notice to bankruptcy trusts on April 30, 2014.

## III.   ARGUMENT

Plaintiff's motion should be denied because there is no basis to quash JCI's valid subpoenas.  *See* FED. R. CIV. P. 45(d)(3).  The bankruptcy trust claim forms contain non-privileged, discoverable information.  Moreover, Plaintiff disclosed a claim form in response to JCI's discovery herein.  Production of these documents will not violate Plaintiff's right to privacy.   Nor will it violate any privilege or confidentiality rules.

Civil justice demands an honest search for the full story − not a single-sided version imposed by one party on its opponent.  *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947). This court recognizes that the discovery rules are to be accorded broad and liberal treatment because mutual knowledge of all relevant facts (gathered by both parties) is essential to proper litigation.  *Fishermen & Merchants Bank v. Burin*, 11 F.R.D. 142, 143 (S.D. Cal. 1951) citing *Hickman,* 329 U.S. at 507. If Plaintiff's motion is granted, JCI will be deprived of its right to "every man's evidence" and the search for the truth will be obfuscated.

### A. PLAINTIFF'S BANKRUPTCY TRUST CLAIM FORMS AND SUPPORTING FACTUAL DOCUMENTATION ARE NOT PRIVILEGED OR CONFIDENTIAL.

Federal courts around the country have consistently ruled that a defendant is entitled to discover claims for asbestos-related injuries that a plaintiff has submitted. When a particular trust claimant sues a defendant, the defendant can obtain discovery regarding that particular claimant's trust submissions. *See In re Western Asbestos Co.*, 416 B.R. 670, 710-11 (N.D. Cal. 2009), aff'd sub nom. *Renfrew v. Hartford Acc.* and Indem. Co., 406 Fed.Appx. 227 (9th Cir. 2010), following *Volkswagen of America,*

---

[14] *See* documents provided by EPI Trust on April 25, 2014, attached as **Exhibit M, pp. 458-471** to the Giaquinto Decl.

JOHN CRANE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER TO QUASH JOHN CRANE INC.'S CIVIL SUBPOENAS TO BANKRUPTCY TRUSTS

10608736v.1

1  *Inc. v. Superior Court* (*Rusk*), 139 Cal.App.4th 1481 (2006) (claims made to asbestos
2  bankruptcy trusts and their related documents are discoverable).

### 1. Confidentiality

4       Confidentiality has been rejected as a basis for withholding bankruptcy trust
5  information.  *See e.g., Shepherd v. Pneumo-Abex, LLC*, 2010 WL 3431633 (E.D.Pa.
6  Aug.30, 2010) (bankruptcy trust claims and supporting factual information are more
7  analogous to a complaint than an offer of settlement or compromise and thus not
8  confidential); *see also Lyman v. Union Carbide Corp.*, 2009 WL6869437 (E.D.Pa.
9  Sept. 18, 2009); *Young v. State Farm Mut. Auto. Ins. Co.*, 169 F.R.D. 72, 77-80
10  (S.D.W.Va. 1996) (rejecting argument that an agreement is rendered non-discoverable
11  by virtue of its confidentiality provisions).   As the California Court of Appeal
12  explains, "there is no reason to provide heightened protection for information
13  concerning [plaintiff]'s work history, which plainly is relevant and not confidential ..."
14  *Rusk,* 139 Cal.App.4th at 1492.

### 2. Privilege

16       Documents are not privileged merely because they are subject to a
17  confidentiality agreement, and confidentiality agreements do not necessarily bar
18  discovery that is otherwise permissible and relevant. *See, e.g., Porter Hayden Co. v.
19  Bullinger*, 350 Md. 452, 464, 469 (1998) (holding that settlement agreements are not
20  automatically protected from discovery even though they were "deemed confidential
21  by the parties who negotiated them").   Further, the attorney work-product doctrine is
22  only applicable to (i) material created in preparation for litigation,[15] and (ii) not
23  intentionally disclosed by plaintiffs through discovery.[16]  *See* Fed. R. Evid. 502 *et seq.*

---

[15]   Documents filed with an asbestos bankruptcy trust or prepared to be filed with an asbestos
bankruptcy trust, including affidavits of exposure to bankrupt entities' products, are not work-
product.  The moment an entity files for bankruptcy, an automatic stay attaches and prevents the
commencement or continuation of any judicial, administrative, or other action or proceeding against
the debtor.  11 U.S.C. § 362 (a)(1).  Thus, the information JCI seeks could not possibly have been
prepared in anticipation of litigation because no litigation is permitted against bankrupt entities.
[16]   Plaintiff disclosed a partial claim to the EPI Trust thereby waiving any asserted privilege.

9                        12-CV-0744 BTM-DHB

JOHN CRANE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER TO QUASH JOHN CRANE INC.'S CIVIL
SUBPOENAS TO BANKRUPTCY TRUSTS

10608736v.1

Plaintiff's bankruptcy trust documentation was not created in preparation for litigation or trial.   Nor was it kept confidential.   Rather, the information was transmitted to third party trusts to substantiate various claims.  Plaintiff also disclosed and produced a partial claim form to JCI during the course of discovery.  Thus, the information JCI seeks is not protected attorney work-product or subject to the attorney-client privilege.

### 3.  Exposure information

Plaintiff's trust claims contain factual information about Mr. Willis' work history including what, when, where and how he was exposed to asbestos from bankrupt entities' products.  This "exposure" information is directly relevant to JCI's defense that the bankrupt entities' products were a substantial contributing factor to Mr. Willis' disease. They are also essential to an accurate allocation of fault and apportionment of damages.

There is no reason to provide heightened protection to information concerning Mr. Willis' work history and asbestos exposure.  *See Rusk,* 139 Cal.App.4th at 1492. JCI is mindful, however, that potentially sensitive information (e.g. financial) could be contained in the documents.  As such, JCI has no objection to the redaction of any settlement amounts from the information prior to production.

### B. PLAINTIFF'S MOTION TO QUASH IGNORES FEDERAL CASE LAW AND THE FEDERAL RULES OF CIVIL PROCEDURE

California procedure and inapposite case law fail to provide a basis for quashing JCI's subpoenas issued under FRCP 45.

### 1.  The California Code of Civil Procedure does not apply

Plaintiff's reliance on California Code of Civil Procedure sections 1985 and 1987 does nothing to support quashing JCI's subpoenas. Procedural and evidentiary issues are governed by federal—not California—law.  *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1934); *Gasperini v. Center for Humanities Inc.*, 518 U.S.

JOHN CRANE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER TO QUASH JOHN CRANE INC.'S CIVIL SUBPOENAS TO BANKRUPTCY TRUSTS

10608736v.1

415, 427 (1996).  Where the issue involved is directly covered by the Federal Rules of Civil Procedure, federal law controls under the Supremacy Clause (Art. VI, cl. 2) *see also Hanna v. Plumer* (1965) 380 US 460, 472 (1965). For discovery, federal courts apply the federal discovery rules in diversity actions.  Any conflicting state rules are disregarded.  *Fagin v. Gilmartin* 432 F.3d 276, 285 (3rd Cir. 2005) fn. 2 (discovery is typically a "procedural matter . . . governed by the Federal Rules"); *University of Texas at Austin v. Vratil,* 96 F.3d 1337, 1340, fn. 3. (10th Cir. 1996).

The issue here is JCI's service of valid subpoenas for production of documents under the Federal Rules of Civil Procedure.  Ignoring the clear-cut procedure for objecting and/or moving to quash a subpoena, Plaintiff focuses on the California Code.  But California law does not control this procedural issue.  Even if it did, neither the California Code of Civil Procedure nor the common law renders bankruptcy trust information non-discoverable.[17]

In *Rusk*, for example, the California Court of Appeal held that claims made to asbestos bankruptcy trusts and their related documents are discoverable in civil litigation.  *Rusk,* 139 Cal.App.4th at 1481.  There, the plaintiff filed an asbestos personal injury action naming sixty-seven (67) defendants including Volkswagen (VW).  *Id.* at 1485-86.  VW propounded discovery requesting all bankruptcy trust documents and listing seventy-two (72) designated companies in the document demand.  *Id*. at 1486.  Although the plaintiff admitted to filing claims with three bankruptcy trusts, he refused to produce any documents on privacy grounds.  *Id*.  The trial court ordered plaintiff to identify all documents he signed under penalty of perjury and produce the documents responsive to VW's request.  Plaintiff was not, however, required to identify documents he did not sign.  *Id*.  The appellate court subsequently broadened the trial court's ruling, requiring plaintiff to turn over all

---

[17] *See* Plaintiff's Motion to Quash pp. 4:19-24; 5:1-8; 5:17-27; 6:1-7.

1    documents he submitted to bankruptcy trusts − even those submitted by his attorneys.

2    *Id.* at 1493, 1497.  JCI is entitled to the same thing.

3                    **2.  The California Evidence Code does not apply**

4          Plaintiff's reliance on California Evidence Code sections 1152 and 1154 is

5    equally unavailing[18] as these sections are inapplicable in federal court. *See Shalaby v.*

6    *Newell Rubbermaid, Inc.*, 379 Fed.Appx. 620 (9th Cir. Cal. 2010), amended, 2010

7    U.S. App. LEXIS 10231 (9th Cir. May 19, 2010), cert. denied, 131 S.Ct. 508, 2010

8    LEXIS 8622 (2010).  Nevertheless, the California Court of Appeal explained that

9    asbestos bankruptcy trust documents need not be admissible to be discoverable. *Rusk,*

10   39 Cal.App.4th at 1491.  *Rusk* found plaintiff's arguments that Evidence Code

11   sections 1152 and 1154 preclude discovery under the "offer of compromise" and

12   "settlement" privileges inapposite as they go to admissibility of evidence − not to

13   discoverability.  *Id.*  The court further noted that Evidence Code sections 1152 and

14   1154 are "not absolute bars to admissibility, since a settlement document may be

15   admissible for a purpose other than proving liability." *Id.* As such, "there is no reason

16   to provide heightened protection for information concerning [plaintiff's] work history,

17   which plainly is relevant and not confidential, or concerning his medical condition

18   which is directly at issue and undoubtedly substantially disclosed in materials that

19   have already been produced during the course of discovery."  *Id.* at 1492.  The

20   plaintiff was therefore ordered to produce both his claim forms and the supporting

21   documentation. *Id.* at 1495-96.  Plaintiff Viola Willis should do the same.

22         **C. ADMISSIBILITY OF BANKRUPTCY TRUST DOCUMENTS HAS NO BEARING ON**
           **DISCOVERABILITY**
23

24         Plaintiff's position that the bankruptcy trust documents are rendered non-

25   discoverable because they may be inadmissible at trial is incorrect.   It is well

26   established that discovery is not conditioned on admissibility. *Herchenroeder v. Johns*

27   ────────────────────

28   [18] *See* Plaintiff's Motion to Quash at p. 8: 7-11.

10608736v.1

*Hopkins Univ. Applied Physics* Lab., 171 F.R.D. 179, 181 (D.Md.1997). Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. PRO 26(b)(1). Indeed, admissibility is not a proper challenge to whether the information sought is discoverable because admissibility is not prerequisite to discovery. *See Polston v. Eli Lilly & Co*., 2010 WL 2926159 *1 (D.S.C. July 23, 2010).

The Federal Rules of Evidence have no bearing on whether Mr. Willis' bankruptcy trust claims are discoverable. FRE 408 does not bar production of bankruptcy trust documentation. *Shepherd v. Pneumo-Abex, LLC*, 2010 WL 3431633 (E.D. Pa. Aug. 30, 2010) (Rule 408 does not prevent disclosure of asbestos trust claims). Further, neither claims submitted nor information related to bankruptcy trusts constitute an offer to compromise or settlement negotiations within the parameters of FRE 408. The Trust Distribution Procedure for each asbestos bankruptcy trust was adjudicated in federal court and included both present and future asbestos plaintiffs (as well as the bankrupt entities' co-defendants). A claimant submits the claim form and either falls or does not fall into the class of claimants for whom the trust was created. As Plaintiff states in her motion, the payment of a claim is determined by established matrix values. There is no negotiation that would place the communication within the bounds of the FRE 408. Plaintiff's motion should accordingly be denied.

### D. BANKRUPTCY TRUST INFORMATION IS VITAL TO JCI'S DEFENSES BECAUSE IT IDENTIFIES ALTERNATIVE SOURCES OF EXPOSURE.

The documents JCI seeks are relevant and likely to disclose information pertaining to Mr. Willis' exposure to asbestos from bankrupt entities' products. This information is crucial to prove the true cause of Mr. Willis' disease and to properly allocate fault and apportion damages amongst the joint tortfeasors. Under the broad rules of relevance for discovery set out in Federal Rule of Civil Procedure 26(b)(1),

JOHN CRANE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER TO QUASH JOHN CRANE INC.'S CIVIL SUBPOENAS TO BANKRUPTCY TRUSTS

10608736v.1

claim forms and their supporting documentation are clearly related to the causes of action and defenses in this case.

On the issue of comparative fault, California substantive law will apply. California Civil Code section 1431.2 states that each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault. CAL. CIV. CODE, § 1431.2. In this regard, the burden on a defendant seeking to allocate fault to other potential tortfeasors is no different than an asbestos plaintiff's burden to prove liability against the defendant. *Sparks v. Owens-Illinois, Inc.*, 32 Cal.App.4th 461, 476-479 (1995). JCI must be able to establish that the third parties' negligence or fault substantially contributed to Mr. Willis' risk of disease. Plaintiff's bankruptcy trust information is essential for this.

To receive compensation from asbestos trusts, claimants (or their attorneys) fill out forms describing their injury, work history, and alleged exposure to the bankrupt entity's asbestos-containing product. Some of the trusts additionally require sworn statements of the claimant's work with or around asbestos-containing products manufactured by the bankrupt entity. Either way, to properly allocate fault, the jury must hear all evidence of Mr. Willis' exposures to asbestos – including those Plaintiff's counsel is seeking to conceal via this motion. The details of Mr. Willis' exposures fall squarely within the bounds of relevant evidence prescribed by FRCP 26. *See* FED. R. CIV. P. 26(b)(1) (each party generally has the right to discover "any non-privileged matter that is relevant to any party's claim or defense.") Because Plaintiff's bankruptcy trust documentation is highly relevant to the issues of causation and damages, Plaintiff's Motion to Quash should be denied.

### E. PLAINTIFF SHOULD NOT BE ALLOWED TO END RUN THE RULES

Withholding asbestos bankrupt trust information to inflate recoveries against solvent defendants should not be allowed. Plaintiff's effort to sweep Mr. Willis'

bankruptcy trust documentation under the rug in an attempt to hold only the solvent defendants accountable for his injuries at trial is both improper and unjust.

"For more than three centuries it has … been recognized as a fundamental maxim that the public ... has a right to every man's evidence." *Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 1928 (1996) (citation omitted).  The *Garlock* court unearthed practices that were at odds with this time-honored maxim.  *Garlock,* 504 B.R. 71, 84 (it has become common practice for asbestos plaintiffs to "withhold evidence of exposure to other asbestos products and to delay filing claims against bankrupt defendants' asbestos trusts until after obtaining recoveries from" the viable defendants.)  Plaintiff's conduct herein is similar. Despite filing bankruptcy trust claims as early as March 2012, Plaintiff repeatedly denied having done so in response to JCI's discovery.  As pointed out by *Jaffee* and *Hickman*, a plaintiff who conceals factual information or documents "commits a pernicious falsehood" aimed at depriving a party of his or her right to every man's evidence.

Asbestos plaintiffs reap enormous benefits from the disconnect between the civil system and trust system—the less exposure to bankrupt entities' products that is revealed during the course of discovery, the greater the perceived settlement value to the solvent defendants.  Large jury verdicts also loom even larger when a plaintiff is willing to understate exposure to bankrupt entities' products for a larger payout from the last civil defendant standing.

If the Motion to Quash is granted, Plaintiff may succeed in having only viable entities left on the verdict form at trial, thus precluding the jury from allocating fault to any of the approximately 100 companies that have filed for bankruptcy to date. This irreparably prejudices the solvent defendants, such as JCI, who will undoubtedly be assigned a greater share of liability than they deserve.  To properly apportion fault, the jury must hear evidence of all of Mr. Willis' exposures to asbestos—including those Plaintiff is trying to prevent access to via this motion.

JOHN CRANE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER TO QUASH JOHN CRANE INC.'S CIVIL SUBPOENAS TO BANKRUPTCY TRUSTS

10608736v.1

## IV.    CONCLUSION

This Court must not allow Plaintiff to engage in the same discovery abuses that were uncovered by *Garlock*.   Disclosure of Mr. Willis' asbestos bankruptcy trust claim forms and all supporting documentation is consistent with fundamental tort principles and prevents Plaintiff from concealing alternative sources of exposure at JCI's expense.   In light of the foregoing, JCI respectfully requests that the Court deny Plaintiff's Motion to Quash.


Dated: May 9, 2014                           HAWKINS PARNELL THACKSTON & YOUNG LLP


                                    By: _____
                                            Edward R. Ulloa
                                            Julia A. Gowin
                                            Andrew S. Russell
                                            Michael B. Giaquinto
                                            Attorneys for Defendant,
                                            JOHN CRANE INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Defendant John Crane Inc. hereby certifies that a true and correct copy of the forgoing document was filed with the Court and served electronically through CM-ECF (Electronic Case Filing) system to all counsel of record to those registered to receive a Notice of Electronic Filing for this case on May 9, 2014.

_____

Michael B. Giaquinto

JOHN CRANE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER TO QUASH JOHN CRANE INC.'S CIVIL SUBPOENAS TO BANKRUPTCY TRUSTS

10608736v.1