1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

8

| | | |
|---|---|---|
| DONALD WILLIS AND VIOLA WILLIS | ) ) | Case No.: 12cv744 BTM (DHB) |
| | ) | **ORDER GRANTING IN PART AND** |
| Plaintiffs, | ) | **DENYING IN PART DEFENDANT** |
| | ) | **FOSTER WHEELER'S MOTION** |
| v. | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| BUFFALO PUMPS INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

14

15      Defendant Foster Wheeler Energy Corporation ("Foster Wheeler") has moved

16  for Summary Judgment against Plaintiffs. (Doc. 229). For the following reasons,

17  Defendant's motion is granted in part and denied in part.

18                          **<u>BACKGROUND</u>**

19      Plaintiff Donald Willis was allegedly exposed to asbestos while serving in the

20  United States Navy between 1959 and 1980 as a result of his work with asbestos-

1

1    containing products. (Doc. 291, First Amended Complaint ("FAC") ¶ 2; exs. A, C).

2    Defendant allegedly supplied gaskets and refractory products containing asbestos to

3    two of the ships Mr. Willis was assigned to: the USS O'Callahan and the USS

4    Brooke. (Doc. 272-47, Exhibit 3 to Plaintiff's Separate Statement, Federal Report In

5    the Case of Donald Willis re: Naval Career ("Federal Report") § 12 at 5-6).

6          In 2012, Donald Willis was diagnosed with Malignant Mesothelioma - a form

7    of cancer that can be caused by inhalation of asbestos particles. (FAC ¶ 1, 3; ex. B).

8    Donald Willis and his wife, Viola Willis, brought suit alleging a number of claims

9    including negligence, strict liability, false representation, intentional failure to warn,

10   premises owner/contractor liability, and loss of consortium. (FAC ¶¶ 20-125).

11         Donald Willis died from Malignant Mesothelioma on May 5, 2013. (FAC ex.

12   B). Viola Willis subsequently amended the complaint to include a cause of action for

13   wrongful death and was substituted in her deceased husband's place so that she could

14   assert his original claims. (FAC ¶¶ 8-10, 86-121).

15         On October 4, 2013, Defendant moved for summary judgment. (Doc. 229).

16                          **<u>LEGAL STANDARD</u>**

17         A motion for summary judgment will be granted "if the movant shows that

18   there is no genuine dispute as to any material fact and the movant is entitled to

19   judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>accord</u> <u>Anderson v. Liberty</u>

20   <u>Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). The moving party bears the burden of

                                        2

1    proof and "must produce either evidence negating an essential element of the

2    nonmoving party's claim or defense or show that the nonmoving party does not have

3    enough evidence of an essential element to carry its ultimate burden of persuasion

4    at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir.

5    2000) (citing High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563,

6    574 (9th Cir. 1990)); see also Cleotex Corp v. Catrett, 477 U.S. 317, 322 (1986)

7    ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . .

8    against a party who fails to make a showing sufficient to establish the existence of an

9    element essential to that party's case, and on which that party will bear the burden of

10   proof at trial.").

11        Further, "[i]f the defendant is moving for summary judgment based on an

12   affirmative defense for which it has the burden of proof, the defendant 'must establish

13   beyond peradventure *all* of the essential elements of the . . . defense to warrant

14   judgment in [its] favor.'" Stuart v. RadioShack Corp., 259 F.R.D. 200, 202 (N.D. Cal.

15   2009) (citing Martin v. Alamo Cmty. College Dist., 353 F.3d 409, 412 (5th Cir.2003),

16   Clark v. Capital Credit & Collection Servs., 460 F.3d 1162, 1177 (9th Cir.2006)); see

17   also Vasquez v. City of Bell Gardens, 938 F.Supp. 1487, 1494 (C.D. Cal. 1996)

18   (citations omitted).

19        Finally, when ruling on a summary judgment motion, the court must view all

20   inferences drawn from the underlying facts in the light most favorable to the

3

1   nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

2   574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

3   **ANALYSIS**

4        Defendant advances several arguments in favor of summary judgment. First,

5   Plaintiff cannot establish that Donald Willis was exposed to asbestos from a Foster

6   Wheeler product. Second, Plaintiff cannot establish that exposure to asbestos from

7   any Foster Wheeler product was a substantial factor causing Donald Willis's disease.

8   Third, the Government Contractor Defense relieves Foster Wheeler of any liability

9   for defective design and failure to warn claims. Fourth, the Sophisticated User

10  Doctrine applies to relieve Foster Wheeler of any duty to warn. Fifth, Plaintiff cannot

11  establish her claim for False Representation. Sixth, Plaintiff cannot establish her

12  claim for Intentional Failure to Warn. Seventh, Plaintiff cannot establish entitlement

13  to punitive damages. The court will consider each of these arguments in turn.[1]

14  **I. Threshold Exposure**

15       Plaintiff's claims require proof that Defendant caused or contributed to Donald

16  Willis's exposure to asbestos. Rutherford v. Owens-Illinois, Inc., 16 Cal.4th 953, 975

17  (1997) ("[P]laintiffs [bear] the burden of proof on the issue of exposure to the

18  defendant's product."); McGonnell v. Kaiser Gypsum Co., 98 Cal.App.4th 1098,

19  1103 (2002) ("A threshold issue in asbestos litigation is exposure to the defendant's

20  ---

[1] The parties have advanced a number of objections against each other's evidence.
The Court will resolve these objections in a separate order.

4

1    product. The plaintiff bears the burden of proof on this issue. If there has been no

2    exposure, there is no causation." (citations omitted)).

3           Defendant advances two arguments regarding threshold exposure. First,

4    Defendant contends there is no evidence that Plaintiff had any initial threshold

5    exposure to an asbestos product supplied by Defendant. Second, Defendant reasons

6    that it cannot be held liable for component parts it did not manufacture, supply, or

7    specify. See O'Neil v. Crane Co., 53 Cal.4th 335, 342 (2012). The Court will address

8    each of these arguments.

9           First, the Court rejects Defendant's assertion that Plaintiff has produced no

10   evidence that Defendant's products caused Plaintiff's threshold exposure to asbestos.

11   Plaintiff has put forth evidence that Donald Willis served as a Boiler Tender on the

12   USS O'Callahan and USS Brooke and that his work involved operation, repair, and

13   maintenance of boilers and auxiliary equipment. (Federal Report §§ 12-13 at 5-6).

14   Mr. Willis testified that the boilers on the O'Callahan and Brooke were made by

15   Defendant Foster Wheeler. (Doc. 272-18, Exhibit YY to Exhibit 1, Deposition of

16   Donald C. Willis ("Willis Depo.") Vol. I 61:2-25; 90:1-7, Vol. II 202:21-24). There is

17   evidence suggesting that Foster Wheeler provided the original gaskets in the boilers

18   and specified and provided replacement gaskets for the Navy to use. (Willis Depo.

19   Vol. V 593:8-594:1, 595:1-7, 596:13-598:9, 670:7-25; Doc. 272-10, Exhibit R1 to

20   Exhibit 1, "Description, Operation and Maintenance Instructions" at 612).

1    Mr. Willis also testified that Foster Wheeler personnel supervised the removal

2  and replacement of the original boiler refractory on the Brooke (Willis Depo. Vol. V

3  640:5-21, 642:8-643:12, 647:8-24, 649:8-15, Vol. VI 725:1-21, 728:7-22, 731:13-

4  732:5; Doc. 272-10, Exhibit R2 to Exhibit 1, Dept. of Navy Correspondence dated

5  November 12, 1965). Additionally, Plaintiff has produced a receipt showing that

6  Defendant invoiced the Navy for a Harbison Walker Lightweight Castable

7  Refractory. (Doc. 272-16, Exhibit WW1 to Exhibit 1, Foster Wheeler Corp. Invoice

8  at USSBROOKE00000508, 510). Finally, Plaintiff has produced evidence that the

9  gaskets originally installed in the boilers, the replacement gaskets specified by Foster

10  Wheeler, and the refractory provided by and replaced by Foster Wheeler all contained

11  asbestos. (Federal Report § 14 at 7-8; Doc. 272-12, Exhibit AA to Exhibit 1,

12  Deposition of Captain William Lowell ("Lowell Depo.") 94:19-95:13, 120:3-12; Doc.

13  272-16, Exhibit WW1 to Exhibit 1, Flexitallic Gasket Co. Invoice at

14  USSBROOKE00000325, Garlock Inc. Invoice at USSBROOKE00000354; Doc. 272-

15  17, Exhibit WW2 to Exhibit 1, Foster Wheeler Energy Corp. Invoices at

16  USSO'CALLAHAN00000030, 00000168-00000172, 00000274; Willis Depo. Vol. V

17  659:4-25; Doc. 272-18, Exhibit ZZ to Exhibit 1, Amato v. Johns-Manville Corp.,

18  Harbison-Walker Refractories Answers to Interrogatories, Answer to Interrogatory

19  No. 3 at 13a).

20    Based on the foregoing, the Court finds that Plaintiff has carried her burden of

1    satisfying the threshold exposure requirement to establish causation. A reasonable

2    jury could conclude that Foster Wheeler provided and/or specified the asbestos-

3    containing products that exposed Mr. Willis to asbestos.

4         The Court must also consider Defendant's second argument: even if Defendant

5    caused Mr. Willis's exposure to component parts containing asbestos, Defendant is

6    nonetheless not liable for component parts it did not manufacture, sell, supply, or

7    specify. Defendant correctly notes that the California Supreme Court limited third-

8    party liability for asbestos exposure in O'Neil, wherein the Court held that "a product

9    manufacturer may not be held liable in strict liability or negligence for harm caused

10   by another manufacturer's product unless the defendant's own product contributed

11   substantially to the harm, or the defendant participated substantially in creating a

12   harmful combined use of the products." 53 Cal.4th at 342. The defendants in O'Neil

13   sold pumps and valves to the United States Navy for use on warships. Id. The Court's

14   decision hinged on the particular facts of the case: first, the defendants neither

15   manufactured nor sold asbestos component parts, id.; second, the initial asbestos parts

16   supplied with the pumps and valves were replaced before the plaintiff was exposed to

17   them, id. at 344-45; and third, the defendants did not specify or recommend the use of

18   asbestos component parts in their pumps and valves, id. at 349.

19        While O'Neil limited a defendant's liability for third-party components, it did

20   not eliminate the possibility. Rather, the California Supreme Court recognized that

7

1   liability for third-party components may be appropriate when "the defendant's own

2   product contributed substantially to the harm, or the defendant participated

3   substantially in creating a harmful combined use of the products." <u>Id.</u> at 342. This

4   case presents facts which appear to fall under the exception recognized by <u>O'Neil</u>.

5   Plaintiff has offered evidence suggesting that Mr. Willis was exposed to the original

6   asbestos gaskets installed in the boiler Defendant sold to the Navy. Based on the

7   timing of Mr. Willis's assignment to the newly built O'Callahan as part of its pre-

8   commission crew and as part of its first crew, a jury could reasonably infer that Mr.

9   Willis was exposed to asbestos in the original gaskets supplied with Defendant's

10  boilers. (Federal Report § 12 at 6; Willis Depo. Vol. V 570:13-571:19). Defendant

11  disputes this, but at the very least this is a triable issue of fact.

12      Moreover, a jury could also find that Defendant specified and/or supplied the

13  replacement gaskets if it credited Mr. Willis's testimony that replacement gaskets

14  were provided by the original manufacturer of the boiler, that the Navy stock

15  numbers on the gaskets were identical and were included in the original boiler

16  technical manual, and that the provided stock gaskets were used for replacements to

17  the boiler. Alternatively, the jury could credit Plaintiff's evidence that Defendant

18  provided the original asbestos refractory for the boiler and supervised its replacement.

19      These facts, if accepted by a jury, would constitute substantial contribution to

20  the harm or participation in creating a harmful combination. The Court concludes that

8

1     <u>O'Neil</u> does not bar defendant's liability for third-party component parts in this case.

2     **II. Substantial Factor**

3         Beyond threshold exposure, Plaintiff must also establish that Defendant's

4 products were a "substantial factor in bringing about the injury." <u>Rutherford</u>, 16

5 Cal.4th at 982. To meet this standard, Plaintiff must produce evidence showing that

6 Mr. Willis's "exposure to defendant's asbestos-containing product in reasonable

7 medical probability was a substantial factor in contributing to the aggregate *dose* of

8 asbestos . . . decedent inhaled or ingested, and hence to the *risk* of developing

9 asbestos-related cancer." <u>Rutherford</u>, 16 Cal.4th at 976-77 (citation omitted).

10         Defendant argues that Plaintiff has presented no evidence that his alleged

11 exposure to asbestos was a substantial factor in the development of his mesothelioma

12 and resulting death. The Court rejects this argument. Plaintiff has presented evidence

13 that Mr. Willis served on the O'Callahan from May 1968 to October 3, 1969, and on

14 the Brooke from November 24, 1974, to August 25, 1977. (Federal Report § 12 at 6).

15 On both ships he worked in the boiler room with Defendant's boilers. (<u>Id.</u>).

16 Moreover, there is evidence that the work involving the boilers and their asbestos

17 components frequently generated dust, which Mr. Willis inhaled. (Willis Depo. Vol.

18 II 155:14-156:4, 156:13-19, 158:8-159:12, 161:6-162:3, Vol. V 647:8-24, Vol. VI

19 725:1-12, 731:13-732:1).

20     *//*

9

1    Additionally, Plaintiff's expert pathologist, Dr. Jerrold Abraham, has opined, to

2  a reasonable degree of medical certainty, that "every exposure to asbestos above

3  background levels is a substantial contributing factor in the development of asbestos

4  related diseases," and that "the exposures experienced by Mr. Willis are high level

5  exposures that occurred for a prolonged period of time and were magnitudes greater

6  than any ambient or background exposure he experienced." (Doc. 272-48, Exhibit 4

7  to Plaintiff's Separate Statement, Declaration of Jerrold L. Abraham, M.D.

8  ("Abraham Decl.") ¶¶ 22-23). Dr. Abraham concluded "with a reasonable degree of

9  medical certainty, that each and every one of those non-trivial exposures to asbestos

10  that Mr. Willis sustained, specifically including exposures from the asbestos-

11  containing gaskets or the asbestos-containing refractory materials incorporated into

12  FOSTER WHEELER boilers, was a significant contributing factor in the

13  development of his asbestos induced disease and his death." (Id.)

14    The Court concludes that this evidence establishes a sufficient basis on which a

15  reasonable jury could find that Defendant's asbestos-containing products were a

16  substantial factor in causing Plaintiff's disease and death.

17    **III. The Government Contractor Defense**

18      **A. Defective Design**

19    The Government Contractor Defense provides defendants selling military

20  equipment to the United States with immunity from state law tort claims for design

10

1   defects "when (1) the United States approved reasonably precise specifications; (2)

2   the equipment conformed to those specifications; and (3) the supplier warned the

3   United States about the dangers in the use of the equipment that were known to the

4   supplier but not to the United States." <u>Boyle v. United Technologies Corp.</u>, 487 U.S.

5   500, 512 (1988). The defense is premised on the "significant conflict [] between" "the

6   federal government's unique and overriding interests in designing and acquiring

7   military equipment," "and the [operation] of state law." <u>Id.</u> at 505-507, 511-12

8   (internal quotation marks and citations omitted). In <u>Boyle</u>, the Court applied this test

9   to the allegedly defective design of a helicopter escape hatch, which resulted in the

10  deaths of the crew after the helicopter crashed. <u>Id.</u> at 502. The Court concluded that

11  the military had specified the design, accepting its costs and benefits, including the

12  risk that crew members would be killed as a result, and that an aggrieved plaintiff

13  could not second guess the military's design specifications through a common law

14  defective design suit. <u>Id.</u> at 511-12.

15      Defendant contends that it can meet each element of the Government

16  Contractor defense and thereby bar Plaintiff's claims sounding in negligence and

17  strict liability for the purportedly defective design of its boilers. Plaintiff argues that

18  Defendant cannot establish the first element of the defense because it has presented

19  no "reasonably precise specifications" in conflict with Defendant's duty of care.

20      Defendant bears the burden of proof when asserting an affirmative defense on

11

1    summary judgment. <u>Clark</u>, 460 F.3d at 1177. Accordingly, Defendant must clearly

2    establish that precise specifications required Defendant to provide its boiler to the

3    Navy equipped with asbestos gaskets and an asbestos refractory and to provide and

4    specify the use of replacement parts containing asbestos. Defendant cites to the

5    Navy's requirement that "the boiler, supercharger and controls shall be designed for

6    service aboard a combatant type naval ship," (Doc. 229-13, Declaration of

7    Commander James P. Delaney ("Delaney Decl.") ¶ 16 (quoting SHIPS-S-4463 ¶

8    3.2)). Defendant also emphasizes that the Navy's ship specification covered all boiler

9    operating criteria, performance requirements, and dimensions and the Navy's military

10   specifications covered all specific components of the boiler and material required to

11   fabricate those components. (Doc. 229-11, Declaration of J. Thomas Schroppe

12   ("Schroppe Decl.") ¶¶ 5-13 (citing MIL-B-18381)).

13          Notably absent from Defendant's evidence is any "reasonably precise

14   specification" that required the use of asbestos gaskets and refractories in

15   Defendant's boilers or required that such asbestos components be specified and

16   provided as replacement parts. Accordingly, the Court finds that Defendant has not

17   carried its burden of proving that military specifications conflicted with its common

18   law duty of care, and thus Defendant cannot raise a government contractor defense

19   against Plaintiff's defective design claims.

20   //

12

1

## **B. Failure to Warn**

2      Defendant also argues that the government contractor defense bars Plaintiff's

3   failure-to-warn claim. The Ninth Circuit extended the government contractor defense

4   to such claims in Getz v. Boeing Co., 654 F.3d 852 (9th Cir. 2011). To establish the

5   defense to a failure-to-warn claim, Defendant must show that "(1) the government

6   exercised its discretion and approved certain warnings; (2) the contractor provided

7   the warnings required by the government; [and] (3) the contractor warned the

8   government about dangers in the equipment's use that were known to the contractor

9   but not to the government." Id. at 866. Stated differently, "the contractor must

10  demonstrate that the government approved reasonably precise specifications thereby

11  limiting the contractor's ability to comply with [its] duty to warn." Id. at 866-67

12  (internal quotation marks and citation omitted).

13      However, the Ninth Circuit has rejected the argument that a defendant must

14  show that the government expressly forbid additional warnings or dictated the precise

15  content of warnings. Rather, a defendant need only establish that the government

16  chose its own warnings, and thus by implication rejected all others. Id. at 866-67. But

17  see In re Hawaii Federal Cases, 960 F.2d 806, 812-13 (9th Cir. 1992) (holding

18  government silence as to warnings does not constitute the exercise of discretion).

19      Defendant contends that the government issued precise specifications regarding

20  the warnings that were allowed in the operation manual and affixed to the equipment

13

1    itself, and thereby exercised sufficient discretion to satisfy the first element of the

2    defense. Defendant does not quote or cite to any such specifications, but does

3    generally cite to the declarations of Mr. Schroppe, Dr. Betts, and Cmdr. Delaney.

4         Mr. Schroppe opined that "[t]he Navy exercised intense direction and control

5    over all written documentation to be delivered with its naval boilers," and

6    "participated intimately in the preparation of this kind of information and exercised

7    specific direction and control over its contents." (Schroppe Decl. ¶ 21). Technical

8    manuals for boilers included safety information "only to the extent directed by the

9    Navy" (Id.) Additionally, Mr. Schroppe stated that the Navy had strict rules

10   regulating the content of communications affixed to machinery and opined that

11   Defendant would not be permitted to affix any warning to equipment or include

12   warnings in technical manuals beyond those required by the Navy. (Id. at ¶ 22).

13        Dr. Betts stated that "Navy specifications or instructions . . . do not support the

14   notion that manufacturers of equipment were free to provide additional warning

15   information about hazards associated with products," and further noted that "the

16   Navy promulgated detailed specifications regarding the content of equipment

17   manufacturer technical manuals - with specific examples of safety instructions that

18   should be included," and that such specifications were "completely silent regarding

19   asbestos." (Doc. 229-5, Declaration of Lawrence Stilwell Betts, MD, PhD ("Betts

20   Decl.") ¶¶ 72, 76). Dr. Betts further emphasized that "it was the Navy that exercised

14

1    final discretion over what warnings to provide, or not provide, in equipment technical

2    manuals." (Id. at ¶ 82).

3         Commander Delany stated that "the Navy . . . had detailed specifications that

4    governed the form and content of written materials to be delivered with equipment,

5    including boilers," and that such "specifications were intended to include only

6    warnings concerning how personnel might be immediately injured by their actions or

7    cause serious damage to equipment," and not "long-term health hazards such as the

8    development of an asbestos-related disease." (Delany Delc. ¶¶ 19-20). Commander

9    Delany further noted that military "specifications did not leave room for individual

10   manufacturers to make determinations about the inclusion of a warning . . . and, in

11   fact, required that manuals be approved by the Navy." (Id. at ¶ 20). Commander

12   Delany opined that "Foster Wheeler would not have been permitted to include a

13   warning regarding asbestos in an equipment manual or on a product label." (Id. at ¶

14   21).

15        Plaintiff responds with their own contrasting evidence suggesting that Navy

16   specifications permitted Defendant to warn end users about the hazards of asbestos.

17   First, in litigation brought against the Navy by contractors seeking indemnification

18   for asbestos claims, the Navy itself denied that its specifications bared a contractors'

19   ability to provide an asbestos warning. (Doc. 272-14, Exhibit KK to Exhibit 1, United

20   States' Response to GAF's Request for Admission, Response to Request No. 106 at

15

771). <u>See</u> <u>GAF Corp. v. United States</u>, 932 F.2d 947, 950 (Fed. Cir. 1991). Second,

Plaintiff cites to the testimony of a military packing inspector who applied military

specifications on a daily basis, and who opined that MIL Standard 129 did not

prohibit manufacturers from including warnings regarding their products. (Doc. 272-

11, Exhibit T to Exhibit 1, Deposition of Adam Martin 20:16-18, 29:4-10, 30:23-

31:3). Third, Plaintiff notes that Defendant's expert, Dr. Betts, testified that he knew

of no instance in which the Navy rejected a manufacturer's safety warning, that he

didn't know if the Navy would have forbidden a safety warning, and that Naval

equipment did include safety warnings about the hazards of asbestos by the 1970's.

(Doc. 272-9, Exhibit I to Exhibit 1, Pokorny v. Foster Wheeler Energy Corp., Trial

Testimony of Dr. Lawrence Betts 1595:21-1596:23; Doc. 272-9, Exhibit K to Exhibit

1, In re New York City Asbestos Litigation, Deposition of Lawrence Betts, 112:19-

22, 113:23-115:5). Fourth, there is evidence that a number of other manufacturers and

military contractors began adding asbestos warnings to their products in the 1960s

and 1980s without objection by the Navy. (Doc. 272-14, Exhibit OO to Exhibit 1,

Deposition of Martin Kraft 150:13-151:19; Doc. 272-8, Exhibit G to Exhibit 1, Rule

26 Expert Disclosure and Report of Lawrence Stillwell Betts at 32; Doc. 272-11,

Exhibit U to Exhibit 1, Johns Manville Internal Correspondence dated December 3,

1975; Doc. 272-11, Exhibit Y to Exhibit 1, Johns-Manville Purchase Specification

dated September 10, 1964; Doc. 272-19, Exhibit CCC to Exhibit 1, Deposition of

16

1    Harry Farley 64:3-66:19).

2         At the very least, there is a substantial dispute of material fact between the

3    parties as to whether the government limited Defendant's ability to comply with its

4    common law duty to warn by either an express prohibition or by the exercise of

5    discretion over which warnings were acceptable. The Court cannot resolve such a

6    dispute on summary judgment. Accordingly, the Court finds that Defendant has not

7    carried its burden of proof and rejects Defendant's assertion of the government

8    contractor defense to bar Plaintiff's failure-to-warn claims.

9         **IV. The Sophisticated User Defense**

10        "Generally speaking, manufacturers have a duty to warn consumers about the

11   hazards inherent in their products." Johnson v. American Standard, Inc., 43 Cal.4th

12   56, 64 (2008) (citation omitted). However, the Sophisticated User Defense relieves

13   manufacturers of their liability for a failure to warn. Id. at 65, 70. Pursuant to this

14   defense, "sophisticated users need not be warned about dangers of which they are

15   already aware or should be aware. Because these sophisticated users are charged with

16   knowing the particular product's dangers, the failure to warn about those dangers is

17   not the legal cause of any harm that product may cause." Id. As the Supreme Court of

18   California has explained, "[t]he duty to warn is measured by what is generally known

19   or should have been known to the class of sophisticated users, rather than by the

20   individual plaintiff's subjective knowledge." Id. at 65-66. User sophistication is

17

1  measured at the time of injury. Id. at 73.

2      Defendant argues that this defense is applicable not only when the injured

3  plaintiff is a sophisticated user, but also when the plaintiff's employer is a

4  sophisticated user. In re Related Asbestos Cases, 543 F. Supp. 1142, 1151 (N.D. Cal.

5  1982) (Finding Navy's sophistication and failure to warn its employees was an

6  intervening cause absolving defendants of liability); Akin v. Ashland Chemical Co.,

7  156 F.3d 1030, 1037 (10th Cir. 1998) (imputing Air Force's sophistication to its

8  employees).  Defendant contends that the Navy was a sophisticated user of asbestos

9  based on its studies of asbestos exposure and health effects in the 1940s, 1950s, and

10  1960s. Defendant also argues that Donald Willis was a sophisticated user of asbestos

11  in his own right and knew or should have known of the hazards of asbestos by the

12  time he was assigned to the USS Brooke in November, 1974.

13      Plaintiff contends that the sophisticated user defense is not applicable when the

14  plaintiff's employer, and not the plaintiff, is the sophisticated user. Moreover,

15  Plaintiff contends that Donald Willis was not a sophisticated user of the asbestos used

16  in Defendant's products.

17      The Court rejects Defendant's argument that the sophisticated user defense

18  applies when the Plaintiff's employer, and not the plaintiff, is the sophisticated user.

19  First, the California Supreme Court case recognizing the defense focused the test on

20  the plaintiff, not his employer. See Johnson, 43 Cal.4th at 71 ("[T]he inquiry focuses

18

1    on whether the *plaintiff* knew, or should have known, of the particular risk of harm

2    from the product giving rise to the injury." (emphasis added)). This emphasis on the

3    plaintiff's sophistication is consistent with the facts of <u>Johnson</u>, wherein the Court

4    applied the doctrine to a certified air conditioning technician who sued the

5    manufacturer of a refrigerant for failure to warn that heating the refrigerant could

6    cause it to decompose into a dangerous gas. <u>Id.</u> at 61-62, 74.

7        Second, California appellate courts have already rejected Defendant's

8    argument that an employer's sophistication may be attributed to an employee

9    plaintiff. <u>See, e.g.</u>, <u>Pfeifer v. John Crane, Inc.</u>, 220 Cal.App.4th 1270, 1297-98 (2013)

10    (affirming rejection of erroneous jury instruction that "employees of a sophisticated

11    user are, by virtue of their employment, deemed to be sophisticated users."); <u>Stewart</u>

12    <u>v. Union Carbide Corp.</u>, 190 Cal.App.4th 23, 29-30 (2010) (rejecting argument that

13    defendant "was entitled to rely on intermediaries to acquire their own knowledge and

14    to provide their own warnings.").

15        While the California Supreme Court has not squarely decided this issue, this

16    Court must anticipate what the California Supreme Court would likely hold. In light

17    of the language and facts of the <u>Johnson</u> decision, and the intervening appellate

18    decisions in <u>Pfeifer</u> and <u>Stewart</u>, the Court finds that the California Supreme Court

19    would likely reject Defendant's argument and hold that the sophisticated user defense

20    requires the Defendant to establish that the plaintiff, not his or her employer, was

19

1  sufficiently sophisticated to know of the dangers. Accordingly, this Court holds the

2  same.

3         Moreover, the Court finds that Defendant has not established that decedent was

4  a sophisticated user of asbestos at the time of his exposure to Defendant's products.

5  First, any training on the dangers of asbestos that Mr. Willis received appear to have

6  occurred after 1978, subsequent to his tours on the USS Brooke and USS O'Callahan,

7  where Plaintiff was exposed to Defendant's boilers. (Willis Depo. Vol. I 99:4-20;

8  Federal Report § 12 at 6). Second, Defendant has not shown that Plaintiff's training

9  made Plaintiff aware or should have made him aware that he could be exposed to

10  asbestos from removing and installing the gaskets used in Defendant's boilers, or

11  supervising such work. To the contrary, it appears that at the time of Plaintiff's

12  exposure, the Navy believed that it was safe to work with gaskets containing asbestos

13  and that any exposure was not clinically significant. (Betts Decl. ¶¶ 17, 36, 42, 49-50,

14  61). Accordingly, the Court rejects Defendant's argument that the sophisticated user

15  defense applies and bars Plaintiff's claims.

16  **V. False Representation**

17         Plaintiff's third cause of action is for false representation pursuant to the

18  Restatement Second of Torts § 402B, which provides:

19         One engaged in the business of selling chattels who, by
        advertising, labels, or otherwise, makes to the public a
20        misrepresentation of a material fact concerning the

20

1

2

>character or quality of a chattel sold by him is subject to
>liability for physical harm to a consumer of the chattel
>caused by justifiable reliance upon the misrepresentation,
>even though

3

>(a) it is not made fraudulently or negligently, and

4

5

>(b) the consumer has not bought the chattel from or entered
>into any contractual relation with the seller.

6

7

California law recognizes claims for misrepresentation by a seller to a

8

consumer, as outlined by the Restatement. See Hauter v. Zogarts, 14 Cal.3d 104, 111

(1975); Westlye v. Look Sports, Inc., 17 Cal.App.4th 1715, 1750-51 (1993).

9

10

Defendant argues that Plaintiff cannot establish the required elements of this

tort. First, Defendant argues that Plaintiff cannot prove that Defendant was

11

responsible for "physical harm to a consumer of the chattel caused by justifiable

12

reliance upon the misrepresentation," because there is no evidence that Defendant's

13

products caused decedent's illness and death. The Court rejects this argument for the

14

reasons previously discussed regarding proof of causation. There is ample evidence in

15

the record to support a finding that Foster Wheeler products contained asbestos and

16

that Mr. Willis was exposed to them through his work.

17

Second, Defendant argues that Plaintiff cannot prove that Defendant made any

18

"misrepresentation of a material fact" regarding its products. Plaintiff responds that

19

she need not show an affirmative misrepresentation because California law

20

21

1   recognizes that misrepresentation includes acts of concealment and non-disclosure.

2   See Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996); Cal. Civ. Code § 1710(3)

3   (defining deceit as "[t]he suppression of a fact, by one who is bound to disclose it, or

4   who gives information of other facts which are likely to mislead for want of

5   communication of that fact"). Plaintiff reasons that she can establish a

6   misrepresentation occurred by proving that Defendant knew about the dangers of

7   asbestos, failed to disclose those dangers to the public, and that decedent relied on

8   Defendant's omission.[2]

9          Plaintiff's reasoning is correct to an extent, but her conclusion is unsound.

10  True, California law does allow claims for fraud and deceit, which require proof of a

11  misrepresentation, to be established through evidence of concealment or

12  nondisclosure of material facts. See, e.g., Lazar, 12 Cal.4th at 638; Lovejoy v. AT&T

13  Corp., 92 Cal.App.4th 85, 95-96 (2001). However, an action for fraud is distinct from

14  an action for misrepresentation by a seller to a consumer. Actions for fraud require

15  proof of intent to defraud. Id. In contrast, the misrepresentation action recognized by

16  the Restatement (Second) of Torts § 402B expressly disclaims any requirement for

17  the Plaintiff to establish intent to defraud or even negligence. In other words, it is a

18  strict liability offense. The two legal theories are distinct and should not be conflated.

19  _____

20  [2] To establish reliance on an omission, "[o]ne need only prove that, had the omitted
    information been disclosed, one would have been aware of it and behaved
    differently." Mirkin v. Wasserman, 5 Cal.4th 1082, 1093 (1993).

22

1  Accordingly, Plaintiff's authority suggesting that misrepresentations may be proven

2  by concealment or non-disclosure is inapplicable to actions for misrepresentation

3  made pursuant to the Restatement (Second) of Torts § 402B.

4        Looking to the Restatement's language, the Court notes that the

5  misrepresentation at issue must regard "material facts concerning the character or

6  quality of the chattel in question," and "does not apply to statements of opinion,"

7  "loose general praise," "sales talk," or "puffing." These requirements and limitations

8  suggest that the misrepresentation must be affirmative, not one made by omission.

9  Moreover, each example provided in the Restatement is based on an affirmative

10  misrepresentation by the seller. See Restatement (Second) of Torts § 402B

11  Illustrations 1-3 (glass in automobile advertised as "shatterproof;" rope manual

12  represents rope possesses strength to hoist 1,000 pounds; hair product label states

13  product is safe when used as directed). Furthermore, the California cases affirming

14  actions brought under § 402B also concern affirmative misrepresentations. See

15  Hauter, 14 Ca.3d at 108-09, 111 ("Golfing Gizmo" advertised as being

16  "COMPLETELY SAFE BALL WILL NOT HIT PLAYER."); Westlye, 17

17  Cal.App.4th at 1750-51 (Ski bindings advertised as "safe," "release easily long before

18  injury to the leg,").

19        The Court concludes that the combination of the text of § 402B, the facts of the

20  cases where California Courts have affirmed actions brought under § 402B, and the

23

1    inapplicability of Plaintiff's authority regarding actions for fraud, strongly suggests

2    that a §402B action for misrepresentation requires proof of an affirmative

3    misrepresentation. Plaintiff's evidence in support of liability on this issue is limited to

4    Defendant's knowledge of the dangers of asbestos and its failure to warn the public

5    and end users like decedent of those dangers. Even if all of Plaintiff's evidence is

6    accepted as true, it does not establish that Defendant made an affirmative

7    misrepresentation regarding the safety of their products. Accordingly, the Court finds

8    that Plaintiff cannot establish an essential element of her claim for misrepresentation

9    under § 402B. The claim is hereby dismissed.

10    **VI. Intentional Failure to Warn**

11        Plaintiff has advanced a claim for Defendant's intentional failure to warn

12    pursuant to Cal. Civ. Code §§ 1708-10. Those sections provide in relevant part:

13                    Every person is bound, without contract, to abstain from
       injuring the person or property of another, or infringing
14                    upon any of his or her rights.

15    Cal. Civ. Code § 1708

16                    Fraudulent deceit. One who willfully deceives another with
       intent to induce him to alter his position to his injury or
17                    risk, is liable for any damage which he thereby suffers.

18    Cal. Civ. Code § 1709

19        A deceit, within the meaning of the last section, is either:

20

24

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

4. A promise, made without any intention of performing it.

Cal. Civ. Code § 1710

Plaintiff contends that Defendant intentionally failed to warn decedent of the dangers of asbestos, despite possessing knowledge of the dangers, and thereby willfully deceived decedent by suppressing facts it was bound to disclose with intent to induce decedent into using its asbestos-containing products. Defendant argues that Plaintiff cannot establish an essential element of her claim: that Defendant was "bound to disclose" information regarding the dangers of asbestos to decedent.

Fraud-by-concealment claims require proof of not only concealment of a material fact, but also proof that defendant was under a duty to disclose the fact. Cal. Civ. Code § 1710(3); Stanwood v. Mary Kay, Inc., 941 F.Supp.2d 1212, 1220-21 (C.D. Cal. 2012) (citing Lovejoy, 92 Cal.App.4th at 96); Daugherty v. American Honda Motor Co., 144 Cal.App.4th 824, (2006)

Generally, a duty to disclose only exists "(1) when the defendant is in a

25

1   fiduciary relationship with the plaintiff; (2) when the defendant had exclusive

2   knowledge of material facts not known to the plaintiff; (3) when the defendant

3   actively conceals a material fact from the plaintiff; and (4) when the defendant makes

4   partial representations but also suppresses some material fact." <u>Stanwood</u>, 941

5   F.Supp.2d at 1221 (citing <u>Falk v. General Motors Corp.</u>, 496 F.Supp.2d 1088, 1094-

6   95 (N.D. Cal. 2007); <u>LiMandri v. Judkins</u>, 52 Cal.App.4th 326, 336 (1997); <u>see also</u>

7   <u>Shin v. Kong</u>, 80 Cal.App.4th 498, 509 (2000) ("A duty to disclose facts arises only

8   when the parties are in a relationship that gives rise to the duty, such as seller and

9   buyer, employer and prospective employee, doctor and patient, or parties entering

10   into any kind of contractual agreement." (internal quotation marks and citation

11   omitted)).

12       Plaintiff has advanced substantial evidence that defendant had exclusive

13   knowledge of the dangers of asbestos and that those dangers were not known to

14   Plaintiff during his service on the USS O'Callahan and the USS Brooke. As early as

15   the 1933, the American Society of Mechanical Engineers warned its members,

16   including at least one Foster Wheeler manager, of "[t]he abundant evidence at hand

17   showing that the inhalation of certain industrial dusts is an important factor in the

18   causation of pulmonary disease," and that "dusts, such as asbestos, cement, slate, etc.

19   are stated to produce a varying degree of fibrosis."  (Doc. 272-20, Exhibit FFF to

20   Exhibit 1, Dust in Industry at 1251, the Control of Industrial Dust at 1258). In 1961,

26

1    the National Safety Council warned its members, including at least one Foster

2    Wheeler manager, that "asbestos dust causes a serious lung disease called

3    'asbestosis,'" and recommended that "[e]mployees should be given adequate training

4    for their jobs so that they understand the process, know the materials they are

5    handling, and therefore can protect themselves and other workers from injury." (Doc.

6    272-21, Exhibit III to Exhibit 1, National Safety Congress Transactions at 000445-

7    000446). In 1968, an internal Foster Wheeler memorandum noted that "insulation

8    dusts are a contributing factor to current increases in deaths due to: mesothelioma,

9    lung carcinoma, pulmonary fibrosis, and calcification of the plural plaques," and that

10   "the pathological manifestations of a disease caused by asbestos inhalation are not

11   apparent until at least 20 years of exposure to asbestos dust. After this period the

12   documented incident of related disease is quite impressive." (Doc. 272-21, Exhibit

13   HHH to Exhibit 1, Foster Wheeler internal memorandum regarding insulation

14   industrial hygiene dated May 20, 1968, at 1304). The memorandum recommended

15   that Foster Wheeler establish maximum dust levels in its fibrous insulation

16   specifications and that "[p]roper utilization of respirators and exhaust systems should

17   continue to be emphasized in our shops where fibers are sprayed or insulation

18   products are installed." (Id. at 1305). The memorandum concluded by noting that

19   while the exact mechanism of asbestos related diseases was not yet fully understood,

20   the relationship between "the job title and the disease" was apparent. (Id.)

27

1    Despite this evidence that Defendant knew that asbestos was hazardous, Mr.

2    Willis testified that Foster Wheeler never warned him about the hazards of asbestos

3    components in their products. (Willis Depo. Vol. II 159:14-24).

4    The Court finds that, based on the foregoing evidence, a reasonable jury could

5    conclude that Defendant had exclusive control of information regarding the dangers

6    of asbestos and that decedent was not aware of those facts during his time working

7    with Defendant's products. If accepted as true, these facts provide a sufficient

8    predicate on which to base a duty to disclose under California law.

9    Additionally, the Ninth Circuit has recognized that California law imposes on

10    manufacturers a general duty to disclose defects in their products relating to safety

11    issues. Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1141-43 (citing Daugherty,

12    144 Cal.App.4th at 836; O'Shea v. Epson Am., Inc., 2011 WL 3299936, at *7-9

13    (C.D. Cal. July 29, 2011); In re Sony Grand Wega, 758 F.Supp.2d 1077, 1095 (S.D.

14    Cal. 2010); Morgan v. Harmonix Music Sys., Inc., 2009 WL 2031765, at *4 (N.D.

15    Cal. July 7, 2009)). "California federal courts have generally interpreted Daugherty as

16    holding that [a] manufacturer's duty to consumers is limited to its warranty

17    obligations absent either an affirmative misrepresentation *or a safety issue*." Id. at

18    1141 (emphasis added). In Wilson, the Ninth Circuit rejected a broad obligation to

19    disclose all material facts, but accepted that a manufacturer would be "bound to

20    disclose" a defect that posed safety concerns or risk of physical injury. Id. (citing

28

1   Daugherty, 144 Cal.App.4th at 836).[3]

2   Plaintiff has advanced sufficient evidence to support the existence of a duty to

3   warn based on Defendant's knowledge of the dangers of asbestos in their products.

4   Based on the previously discussed evidence, a reasonable jury could conclude that

5   Defendant knew its products had a dangerous defect that threatened the safety of

6   those exposed to it.

7   In summary, the Court concludes that there is sufficient evidence on which to

8   base a duty to disclose and to find that Defendant breached that duty by intentionally

9   failing to warn decedent of the dangers of using its products. Plaintiff's claim for

10  intentional failure to warn presents material triable issues and may move forward.

11  **VII. Punitive Damages**

12  Finally, Defendant seeks partial summary judgment as to Plaintiff's claim for

13  punitive damages. The availability of punitive damages is a question of state law.

14  Central Office Tel. v. AT&T Co., 108 F.3d 981, 993 (9th Cir. 1997), rev'd on other

15  grounds, 524 U.S. 214, 228 (1998). To obtain punitive damages under California law,

16  Plaintiff must establish "by clear and convincing evidence that the defendant has been

17  guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a); see also Basich v.

18  [3] The Court recognizes that Wilson addressed a theory of fraudulent concealment
    brought pursuant to California's Consumer Legal Remedies Act. However, the
19  elements of fraudulent concealment, and particularly the duty to disclose, remain
    identical whether the theory is pursued under the CLRA or, as in this case, under Cal.
20  Civ. Code. 1709-10. See Falk, 496 F.Supp.2d at 1094-95 (adopting LiMandri's four-
    factor fraudulent concealment test for concealment under the CLRA).

1    Allstate Ins. Co., 87 Cal.App.4th 1112, 1121 (2001) ("[O]n a motion for summary

2    adjudication with respect to a punitive damages claim, the higher evidentiary standard

3    applies. If the plaintiff is going to prevail on a punitive damages claim, he or she can

4    only do so by establishing malice, oppression or fraud by clear and convincing

5    evidence.").

6          Plaintiff's complaint and opposition brief argue that Defendant's conduct was

7    malicious. Malice is defined by § 3294(c) as "conduct which is intended by the

8    defendant to cause injury to the plaintiff or despicable conduct which is carried on by

9    the defendant with a willful and conscious disregard of the rights or safety of others."

10   To establish the existence of "conscious disregard," the plaintiff may show "that the

11   defendant was aware of the probable dangerous consequences of . . . [its] conduct,

12   and that . . . [it] willfully and deliberately failed to avoid those consequences."

13   Hilliard v. A.H. Robins Co., 148 Cal.App.3d 374, 395 (1983) (internal quotation

14   marks and citation omitted).

15         Additionally, Cal. Civ. Code § 3294(b) imposes a heightened bar for obtaining

16   punitive damages against corporations:

17                An employer shall not be liable for damages pursuant to
                  subdivision (a), based upon acts of an employee of the
18                employer, unless the employer had advance knowledge
                  of the unfitness of the employee and employed him or
19                her with a conscious disregard of the rights or safety of
                  others or authorized or ratified the wrongful conduct for
20                which the damages are awarded or was personally guilty

                                        30

> of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

Thus, Plaintiff must show that the alleged malice occurred at a high level within Foster Wheeler Energy Corporation. While this evidentiary burden is high, it is not insurmountable. Plaintiff need not produce a smoking memorandum signed by the CEO and Board of Directors. Rather, California law permits a plaintiff to satisfy the "managing agent" requirement

> through evidence showing the information in the possession of the corporation and the structure of management decisionmaking that permits an inference that the information in fact moved upward to a point where corporate policy was formulated. These inferences cannot be based merely on speculation, but they may be established by circumstantial evidence, in accordance with ordinary standards of proof.

Romo v. Ford Motor Co., 99 Cal.App.4th 1115, 1141 (2002) ("It is difficult to imagine how corporate malice could be shown in the case of a large corporation except by piecing together knowledge and acts of the corporation's multitude of managing agents.") vacated and remanded on other grounds, 538 U.S. 1028 (2003).

Defendants argue there is no evidence in the record which supports the existence of malice by its managing agents. In response, Plaintiff argues that ample evidence in the record exists to support a finding that Defendant's managing agents

31

1   knew about the dangers of asbestos, but nonetheless failed to provide any warning to

2   Mr. Willis and other end users. Plaintiff cites to the evidence of Defendant's

3   knowledge it developed as early as the 1930s and further through the 1960s. (See

4   supra section VI). Furthermore, Plaintiff emphasizes Mr. Willis's testimony that

5   Foster Wheeler personnel supervised the removal and replacement of an asbestos

6   refractory, which generated extensive dust and which Foster Wheeler personnel failed

7   to warn of, despite OSHA asbestos dust standards requiring employers to provide a

8   warning on jobsites. (Doc. 272-21, Exhibit JJJ to Exhibit 1, Occupational Safety and

9   Health Standards, Standard of Exposure to Asbestos Dust at 1317, part (g)).

10          Based on this evidence, a jury could reasonably conclude that Defendant's

11   managing agents initiated and continued the sale of boilers with asbestos components

12   and replacement parts without providing a warning of the dangers of asbestos despite

13   knowing about those dangers, and that Defendant thereby engaged in "despicable

14   conduct . . . with a willful and conscious disregard of the rights or safety of others."

15   Cal. Civ. Code § 3294(c). The Court does not hold that such facts are true. Rather, the

16   Court merely finds that Plaintiff has presented sufficient clear and convincing

17   evidence to withstand summary judgment and have the question of whether

18   Defendant actually engaged in such conduct resolved by a jury.

19   //

20   //

32

1

**<u>CONCLUSION</u>**

2      For the foregoing reasons, Defendant Foster Wheeler's motion for summary

3 judgment is granted in part and denied in part. Defendant's motion for summary

4 judgment is granted in respect to Plaintiff's third cause of action for false

5 representation. Defendant's motion is denied in all other respects.

6      Generally, motions for reconsidering are disfavored. <u>Am. Rivers v. NOAA

7 Fisheries</u>, 2006 U.S. Dist. LEXIS 48195 at *8 (D. Or. July 14, 2006) (citing <u>Fuller v.

8 M.G. Jewelry</u>, 950 F.2d 1437, 1442 (9th Cir. 1991)). Moreover, the Court has

9 devoted a very substantial amount of time to deciding this motion. A pretrial

10 conference is approaching. Therefore, to avoid further delays, any party wishing to

11 make a motion for reconsideration as to any issue resolved in this order my do so

12 only within seven calendar days of the entry of this order. The motion papers are

13 limited to an absolute number of five pages. If the Court believes that further briefing

14 and/or a response is required, the Court will enter an order for such briefing.

15

16 IT IS SO ORDERED.

17 Dated: July 18, 2014             _____
                            BARRY TED MOSKOWITZ, Chief Judge

18                           United States District Court

19

20